UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TRACY A. WILLIAMS,           :
                             :
       Plaintiff,            :
                             :
v.                           :        Civil No. 1:25-00147-MSM-PAS
                             :
BALLY'S MANAGEMENT GROUP, LLC,  :
                             :
       Defendant.            :
_____:

**DEFENDANT BALLY'S MANAGEMENT GROUP, LLC'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT**

Defendant Bally's Management Group, LLC moves under Federal Rule of Civil

Procedure 12(b)(1) to dismiss Plaintiff Tracy William's complaint for lack of statutory and

constitutional standing (Count II).  Defendant also moves under Federal Rule of Civil Procedure

12(b)(6) to dismiss Plaintiff's complaint for failure to state a claim (Counts I and II).  Defendant

files this memorandum in support of its motion to dismiss along with the attached exhibits.

Defendant's Exhibits 1 and 3 through 5 are true and correct copies of the employee welfare

benefit plan documents that Plaintiff references in her complaint.

**INTRODUCTION**

Plaintiff filed a two-count putative class action complaint alleging that Bally's

Management Group, LLC (Bally's Management) violated the Employee Retirement Income

Security Act (ERISA), 29 U.S.C. § 1182, by requiring her to pay a tobacco surcharge as part of

an outcome-based wellness program allegedly without offering a reasonable alternative standard

to qualify for an elimination of the surcharge.  *See* Complaint, Doc. 1, ¶ 61.  Critically, Plaintiff

alleges "upon information and belief" that Bally's Management failed to include the required

notice of a reasonable alternative standard in the plan materials distributed to participants. *Id*. ¶¶ 8, 40. As a result, she contends that the Plan's tobacco surcharge is "facially unlawful under ERISA." *Id*. ¶ 9.

The fundamental flaw with Plaintiff's statutory claim under Count I is that she pleads herself out of court because the benefits guides she references in the complaint disclose the availability of a reasonable alternative standard in compliance with the Department of Labor's sample disclosure language. *See* 29 C.F.R. § 2590.702(f)(6). Plaintiff further fails to state a claim regarding Bally's Management's supposed failure to pay the "full reward" under the reasonable alternative standard because she does not allege being denied a full reward nor does she proffer any details about Bally's Management's non-payment of the full reward in any other circumstances. In any event, her "full reward" claim additionally fails as a matter of law because the violation she alleges does not comport with the text and structure of the statute.

Plaintiff also alleges that Bally's Management violated its duty of loyalty and engaged in prohibited transactions by collecting the tobacco surcharge. *See* Compl., ¶¶ 72-75. However, as stated in the plan document Plaintiff references in her complaint, *id*. ¶ 40, Bally's Management used those contributions to pay plan benefits. Plaintiff cannot state a claim under Count II because the plan administrator's payment of plan benefits is not a fiduciary breach or a prohibited transaction. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Hutchins v. HP Inc.*, --- F. Supp. 3d ---, 2025 WL 404594, at *5-6, 8 (N.D. Cal. Feb. 5, 2025).

Plaintiff additionally lacks constitutional and statutory standing to bring a claim for relief under 29 U.S.C. § 1109, as stated in Count II, because she fails to allege any facts plausibly showing the welfare benefit plan was harmed as a result of using the tobacco surcharge to pay benefits under the plan. The plan document she references in her complaint, *see* Compl., ¶ 40,

2

identifies the welfare benefit plan as a self-funded arrangement based on contributions from Bally's Management and employee participants of the plan. Importantly, Plaintiff does not allege that she or anyone else failed to receive a benefit under the plan, nor has she plausibly alleged that the plan's funding was jeopardized as a result of the tobacco surcharge that was used to pay plan benefits. As a result, she lacks constitutional and statutory standing to bring a claim on behalf of the plan in a representative capacity under 29 U.S.C. § 1109. *See N.R. v. Raytheon Co.*, 24 F.4th 740, 749-50 (1st Cir. 2022); *Patterson v. United Healthcare*, 76 F.4 487, 493-94 (6th Cir. 2023).

Alternatively, Plaintiff lacks a cause of action to bring statutory and fiduciary breach claims under Counts I and II because she did not exhaust the Plan's administrative appeal process for addressing contribution and eligibility issues relating to the tobacco surcharge. Plaintiff alleges that the tobacco surcharge is an "impermissible cost-shifting scheme" that imposes higher eligibility costs on participants that the plan administrator should have paid. Compl., ¶¶ 9-11. Those allegations amount to a claim that she received an adverse benefit determination (as defined by regulation). *See* 29 C.F.R. § 2560.503-1(m)(4). But Plaintiff failed to avail herself of the plan's administrative appeal process for challenging the adverse benefit determination. The Court may therefore dismiss her entire complaint for failure to exhaust administrative remedies.

## STATUTORY AND REGULATORY BACKGROUND

### A. Employee Welfare Benefit Plan Administration

ERISA governs the management and administration of employee welfare benefit plans established or maintained by employers that provide employee participants with medical, surgical, or hospital benefits. *See* 29 U.S.C. §§ 1002(1), 1101(a). An employer establishes an

employee welfare benefit plan through a written instrument, known as a "plan document," that governs the plan.  *See* 29 U.S.C. § 1102(a)(1); *Rhea v. Alan Ritchey*, 858 F.3d 340, 343-44 (5th Cir. 2017).  The entity named as plan administrator in the plan document is responsible for the management and administration of the plan.  *See* 29 U.S.C. § 1002(16)(A)(i), (21)(A)(iii); *Bouboulis v. Transport Workers Union*, 442 F.3d 55, 65 (2d Cir. 2006).

Employers have the option of establishing a welfare plan by purchasing a "guaranteed benefit policy" from an insurance carrier that bears the financial risk of paying benefits.  *See* 29 U.S.C. § 1101(b)(2)(B); *North Cypress Med. Center v. Aetna Life Ins.*, 898 F.3d 461, 468 (5th Cir. 2018).  Alternatively, an employer may sponsor a "self-insured" plan by paying the health care costs of its covered employee participants with its own funds and participants' contributions rather than paying premiums to an insurance carrier.  *See Loren v. Blue Cross*, 505 F.3d 598, 601-02 (6th Cir. 2007).  Although employers are financially responsible for funding self-insured plans, those plans typically involve a "divided administration" where the employer retains an insurance carrier to supply a network of medical providers and to help administer claims processing and other programs under the plan.  *See Rud v. Liberty Life Assurance*, 438 F.3d 772, 774 (7th Cir. 2006).

Because ERISA does not impose any funding requirements or standards on employee welfare benefit plans, *see* 29 U.S.C. § 1081(a)(1), employers sponsoring those plans are permitted to maintain them without identifiable plan assets or a separate trust.  *See* U.S. Dep't of Labor, Advisory Opinion 1992-02A (Jan. 17, 1992).  Although the benefits under such plans are secured by the general assets of the employer, "the sponsor's general assets do not become plan assets solely as a result of the employer's promise to pay benefits."  *Id.*; *see also Trustees of Graphic Communications v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008).

4

### B. Wellness Programs in Group Health Plans

In addition to an employer's paying benefits from its general assets, it is also permitted to require contributions from participant employees to fund welfare plan benefits. *See* 29 C.F.R. § 2510.3-102(c). Although sponsors of group health plans[1] are prohibited from charging different premiums to similarly situated individuals enrolled in the plans based on any "health status-related factor," 29 U.S.C. § 1182(b)(1), the statute allows plans to establish "premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B); *see also* 42 U.S.C. § 300gg-4(b)(2)(B). These programs are commonly known as "wellness programs." 42 U.S.C. § 300gg-4(j)(1)(A); *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (final rule) (June 3, 2013). "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

In 2010, Congress made provisions of the Public Health Service Act (PHSA) applicable to wellness programs offered by group health plans. *See* 29 U.S.C. § 1185d(a)(1); *see also* Public Law No. 111-148, Title I, § 1201 (March 23, 2010) (amending Section 2705 of PHSA, codified at 42 U.S.C. § 300gg-4(j)(3)(A)). The PHSA provides, in relevant part, that a "reward" for adherence to a wellness program includes premium rebates, discounts, and "the absence of a surcharge." 42 U.S.C. § 300gg-4(j)(3)(A). The PHSA further provides that, when a reward for compliance with a wellness program requires satisfaction of a standard related to a health status

---

[1] A group health plan is "an employee welfare benefit plan to the extent that the plan provides medical care . . . to employees or their dependents . . . directly or through insurance, reimbursement, or otherwise." 29 U.S.C. § 1191b(a)(1).

5

factor, the wellness program must: (1) be "reasonably designed to promote health or prevent disease"; (2) make the "full reward under the wellness program . . . available to all similarly situated individuals" and (3) provide "individuals eligible for the program the opportunity to qualify for the reward for the program at least once each year."  42 U.S.C. § 300gg-4(j)(3)(A)-(D).

In 2013, the Departments of Treasury, Labor, and Health and Human Services published revised regulations implementing provisions of the PHSA relating to wellness programs.  *See* 78 Fed. Reg. at 33158.  Following the time limits specified by statute, the regulations require that the plan "give individuals eligible for the program an opportunity to qualify for the reward under the program at least once per year."  29 C.F.R. § 2590.712(f)(4)(i).  When the Departments published the regulation, they stated in the preamble that the "once per year" rule "was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease."  78 Fed. Reg. at 33162.  The Department of Labor also issued guidance clarifying that the "once per year" requirement is satisfied if "a participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (i.e., avoiding the tobacco premium surcharge) under the program[.]"  *FAQS About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation* 6 (January 9, 2014).[2]

A group health plan offering a wellness program must also provide a "reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward" to individuals for whom "it is unreasonably difficult due to a medical condition to satisfy the

---

[2]  Available at:  https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/affordable-care-act-implementation-faqs-part-xviii-mental-health-parity.pdf.

otherwise applicable standard" or where "it is medically inadvisable to attempt to satisfy the otherwise applicable standard."  42 U.S.C. § 300gg-4(j)(3)(D)(i)(I)-(II).  If the plan materials describe the terms of the wellness program, the PHSA requires that those materials must also disclose the availability of the reasonable alternative standard.  *See* 42 U.S.C. § 300gg4(j)(3)(E).  The Department of Labor's regulation provides sample language that satisfies the disclosure requirement.  *See* 29 C.F.R. § 2590.702(f)(4)(v), (f)(6).

### C.  Fiduciary Duties and Transactions Prohibited Under ERISA

ERISA requires that fiduciaries administer plans for the exclusive purpose of providing benefits to participants and defraying reasonable expenses in administering the plan.  *See* 29 U.S.C. § 1104(a)(1)(A)(i)-(ii); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).  However, those duties only apply to persons acting in a fiduciary capacity.  *See Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000).  An employer's actions as a settlor when making plan design decisions do not involve a fiduciary function governed by ERISA.  *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 78 (1995).  Nor does the duty of loyalty preclude the plan administrator from deriving an accompanying benefit in managing or implementing the plan.  *See Ellis v. Fidelity Management*, 883 F.3d 1, 5 (1st Cir. 2018).

ERISA supplements the fiduciary duties to the plan by prohibiting fiduciaries from engaging in specified transactions between the plan and parties in interest that tend to threaten the financial integrity of plans.  *See* 29 U.S.C. § 1106(a)-(b); *Harris Trust v. Salomon Smith Barney*, 530 U.S. 238, 241-42 (2000).  Those prohibitions address traditional commercial transactions such as leasing, sales, exchanges of property, money lending, credit extensions, and furnishing goods and services, which put plan funds at risk if they are not conducted at arm's

length.  *See Spink*, 517 U.S. at 892-93.  The statute also prohibits fiduciary self-dealing with plan assets.  *See* 29 U.S.C. § 1106(b)(1).  However, the fiduciary's use of plan assets to pay benefits under the plan is not a "transaction" prohibited by the statute.  *See Spink*, 517 U.S. at 892-93; *Hutchins,* 2025 WL 404594, at *8.

## FACTUAL BACKGROUND

Bally's Management and Bally's Chicago Operating Company, LLC (Bally's Chicago) are subsidiaries of Bally's Corporation.[3]  Bally's Corporation and its subsidiaries are engaged in gaming, hospitality, and entertainment businesses.  *See* Compl., ¶ 14.[4]  Bally's Management (previously its predecessor, Twin River Management Group, Inc.)[5] sponsors and maintains the Bally's Management Group, LLC Welfare Benefit Plan (Plan), an employee welfare benefit plan that provides medical, surgical, and other healthcare benefits to the employees of various subsidiaries of Bally's Corporation.  *See* Compl., ¶ 15; *see also* Def.'s Exhibit 1 at 1, 115.[6] Bally's Management is the plan administrator of the Plan.  *See* Def.'s Ex. 1 at 1, 2.

---

[3]  Bally's Corporation, Form 10-K (fiscal year ended Dec. 31, 2024), Exhibit 21.1, at https://www.sec.gov/Archives/edgar/data/1747079/000174707925000039/baly-20241231.htm. The Court may take judicial notice of forms filed with the Securities and Exchange Commission. *See* Fed. R. Evid. 201(b); *Glenbrook Capital Ltd. Partnership v. Kuo*, 525 F. Supp. 2d 1130, 1137 (N.D. Cal. 2007) ("The SEC Forms at issue here [Forms 8–K and 10–K] are publicly-available documents filed with the SEC. For these reasons, the Court takes judicial notice of these documents").

[4]  Bally's Corporation, Form 10-K, Part I.

[5]   Bally's Management Group, LLC was formerly known as "Twin River Management Group, Inc."  Bally's Corporation, Form 10-K, Exhibit 10-22.

[6]  Defendant's Exhibit "1" is a true and correct copy of Bally's Management Group, LLC Health Benefit Summary Plan Description 7670-00-416456, effective January 1, 2024, which is the "plan document" for the Plan.  *See* 29 U.S.C. § 1102(a)(1).  Because Plaintiff refers to and relies on the plan document in the complaint, *see* Compl., ¶ 40, the Court considers the information in the document in evaluating the sufficiency of the complaint.  *See Bazinet v. Beth Israel Lahey Health, Inc*., 113 F.4th 9, 16 (1st Cir. 2024); *Hutchins*, 2025 WL 404594, at *3 (considering the plan document that is incorporated by reference in the complaint).

The Plan is self-funded.  *Id*. at 2.[7]  Bally's Management pays the Plan's liabilities from its general assets along with contributions from employees.  *Id*. at 1, 2, 15, 21.  As stated in the Plan document, "Employees help cover some of the costs of covered benefits through contributions, Deductibles, out-of-pocket amounts, and Plan Participation amounts as described in the Schedule of Benefits."  *Id*. at 1.  Acting in its role as plan sponsor, Bally's Management may terminate, suspend, or amend the Plan at any time, in whole or in part, including modifications to benefits.  *Id*. at 103, 106.

Plaintiff has been employed by Bally's Chicago since August 2023.  *See* Compl., ¶¶ 10, 12; *see also* Def.'s Ex. 2.[8]  She is a participant in the Plan.  *See* Compl., ¶ 13.  Because Plaintiff uses tobacco products, she pays a monthly surcharge as part of her contribution for participating in the Plan.  *See* Compl., ¶¶ 12, 44; *see also* Def.'s Ex. 3 at 13.[9]

Bally's Management issues annual benefits guides to Plan participants with information about the healthcare benefits under the Plan.  *See* Compl., ¶ 40; *see also* Def.'s Ex. 3.  The Plan's annual benefits guides also discuss the terms of the tobacco cessation program to assist participants with achieving better health.  *See* Def.'s Ex. 3 at 13.  The Plan engages service providers to assist participants with quitting the use of tobacco products.  *Id*.  The Plan also

---

[7] *See* Bally's Corporation, Form 10-K, Note 2 to Consolidated Financial Statements, *Self-Insurance Reserves*.

[8] Defendant's Exhibit 2 is a true and correct copy of the employment offer letter that Bally's Chicago sent to Plaintiff Williams, which she signed when accepting the job offer.

[9] Defendant's Exhibit 3 is a true and correct copy of the 2025 Benefits Guidebook for the Plan. Because Plaintiff refers to annual benefits guides in her complaint, *see* Compl., ¶¶ 8, 40, the Court considers the information in the document to evaluate the sufficiency of the complaint. *See Bazinet*, 113 F.4th at 16; *Beddall v. State St. Bank & Tr. Co*., 137 F.3d 12, 16-17 (1st Cir. 1998).

covers 100 percent of the costs and waives the participant's deductibles for prevention and counseling relating to tobacco use. *See* Def.'s Ex. 1 at 8.

In addition to the tobacco cessation program, the Plan allows employees to participate in an alternative program based on their medical conditions or specific circumstances. *See* Def.'s Ex. 3 at 13. The annual benefits guides notify employees about the available alternative standard and whom to contact to request participation in an alternative program:

> Bally's is committed to helping you achieve your best health. If you think you might be unable to meet the standard for a reduction under this program, or if it is medically inadvisable for you to attempt to achieve the standard for the reduction under this program, you might qualify for an opportunity to earn the same reward (no tobacco surcharge) by different means. Contact Human Resources and we will work with you, to find a program with the same reward that is right for you in light of your health status.

*Id*. The previous annual benefits guides that the Plan issued to participants during the time of Plaintiff's employment with Bally's Chicago similarly discuss the alternative standard available to participants interested in avoiding the tobacco surcharge. *See* Def.'s Ex. 4 at 8; Def.'s Ex. 5 at 7.[10] The annual benefits guides do not place any restrictions on when an employee may participate in the tobacco cessation program or in any alternative program. *See* Def.'s Ex. 3 at 13; Def.'s Ex. 4 at 8; Def.'s Ex. 5 at 7.

### COURSE OF PROCEEDINGS

On April 10, 2025, Plaintiff filed a two-count putative class action complaint alleging that Bally's Management violated the anti-discrimination provisions of ERISA. *See* Compl., ¶¶ 61, 67. Plaintiff paid a tobacco surcharge as a required contribution for participation in the Plan, *id*. ¶ 44, but she alleges "upon information and belief" that Bally's Management failed to include

---

[10] Defendant's Exhibit 4 is a true and correct copy of the 2024 Benefits Guidebook for the Plan. Defendant's Exhibit 5 is a true and correct copy of the 2023 Benefits Guidebook for the Plan.

notice in plan benefit materials of a reasonable alternative standard for avoiding the tobacco surcharge. *Id.* ¶¶ 8, 40, 61. She relatedly alleges the Plan failed to offer a "full reward" for completing the outcome-based program or an alternative standard. *Id*. ¶ 62. Count I of her complaint relatedly seeks remedies under 29 U.S.C. § 1132(a)(3). *Id*. ¶ 65.

Plaintiff also alleges that Bally's Management breached its fiduciary duties to the Plan, and engaged in related prohibited transactions, by using the tobacco surcharge to help fund Plan benefits and reduce Bally's Management's contributions. *Id*. ¶¶ 67, 72. Based on those alleged breaches, Count II of Plaintiff's complaint purports to assert a cause of action under 29 U.S.C. § 1109. *Id*. ¶ 77.

Bally's Management moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss Count II of the complaint based on Plaintiff's lack of statutory and constitutional standing. Defendant additionally moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I and II of the complaint based on Plaintiff's failure to allege sufficient, non-conclusory facts necessary to state a claim.

## STANDARD OF REVIEW

To survive a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003). If the defendant mounts a "sufficiency challenge," the Court will assess the sufficiency of plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in plaintiff's favor. *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). If, however, the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged

11

jurisdictional facts, "plaintiff's jurisdictional averments are entitled to no presumptive weight" and the Court considers the allegations by both parties to resolve the factual disputes. *Id*. The Court has broad authority in conducting the inquiry and may consider extrinsic evidence in determining its own jurisdiction. *Id*. at 363-64. The attachment of exhibits to a motion to dismiss does not convert it to a motion for summary judgment. *See Gonzalez v. U.S.*, 284 F.3d 281, 288 (1st Cir. 2002).

Dismissal under Rule 12(b)(6) is appropriate if the Court determines the complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Edes v. Verizon Commc'ns, Inc*., 417 F.3d 133, 137 (1st Cir. 2005). A complaint must contain sufficient factual allegations to state a claim for relief that is both actionable as a matter of law and plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a complaint must set forth factual allegations, either direct or inferential, for each material element necessary to sustain recovery under some actionable legal theory. *See Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

Under that standard, the Court first isolates and ignores statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. *See Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012). The Court then takes the complaint's well-pled facts as true to assess whether they plausibly narrate a claim for relief. *Id*. Plausible means more than merely possible. *Id*. Dismissal is appropriate if the facts as alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal citation omitted).

In deciding a motion to dismiss, the Court may also consider extrinsic documents without converting a motion to dismiss into a motion for summary judgment. *See Freeman v. Town of*

*Hudson*, 714 F.3d 29, 36 (1st Cir. 2013).  Those include documents the authenticity of which are not disputed by the parties, official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint.  *Id*.  Particularly when "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings," allowing the Court to review it.  *Newman v. Lehman Brothers*, 901 F.3d 19, 25 (1st Cir. 2018).  When such documents contradict an allegation in the complaint, the document trumps the allegation.  *See Clorox Co. P.R. v. Proctor & Gamble.*, 228 F.3d 24, 32 (1st Cir. 2000) (citing *N. Indiana Gun & Outdoor Show v. City of S. Bend*, 163 F.3d 449, 4554 (7th Cir. 1998)).

### ARGUMENT

**A. Plaintiff Lacks Statutory and Constitutional Standing to Bring Claims Under 29 U.S.C. § 1109 and § 1132(a)(2) (Count II)**

Plaintiff alleges that Bally's Management failed to provide a reasonable alternative standard under the Plan's outcome-based wellness program for tobacco cessation and therefore improperly collected a tobacco surcharge from her as part of her contribution requirement for participation in the Plan.  *See* Compl., ¶¶ 8-9, 40.  Plaintiff relatedly alleges that Bally's Management violated its fiduciary duty of loyalty and engaged in prohibited transactions by reducing its financial obligation to the Plan through imposing a tobacco surcharge.  *Id*. ¶ 71-72.  Based on those allegations, in Count II of the complaint, Plaintiff attempts to assert a cause of action under 29 U.S.C. § 1109(a).  *Id*. ¶ 77.  The problem with Plaintiff's fiduciary breach and prohibited transaction claims, however, is her failure to establish a related harm to the Plan as required for constitutional and statutory standing under Section 1109.

Claims under Section 1109(a) require showing "losses to the plan," not losses to the individual plaintiff bringing suit.  *See* 29 U.S.C. § 1109(a); *LaRue v. DeWolff, Boberg & Assocs.*,

13

552 U.S. 248, 261–62 (2008) (Thomas, J., concurring in the judgment) ("The plain text of [Section 1109(a)], which uses the term 'plan' five times, leaves no doubt that [Section 1132(a)(2)] authorizes recovery only for the plan."). Individual injury, therefore, is not cognizable under Sections 1132(a)(2) and 1109(a) unless it harms the plan. *See Raytheon,* 24 F.4th at 750; *Patterson v. United Healthcare,* 76 F.4th 487, 498-99 (6th Cir. 2023).

Plaintiff's allegations focus on the purported harm she suffered in paying the tobacco surcharge as part of her contribution requirement under the Plan. *See* Compl., ¶ 44. Aside from conclusory statements that the Plan was also harmed, Plaintiff has not made any specific allegations about how her payment of additional premiums harms the Plan, as opposed to her individually as a participant. *See Raytheon*, 24 F.4th at 750. Plaintiff's prayer for relief confirms that the alleged damages relate to her alone (and similarly situated participants) based on her payment of the tobacco surcharge. *See* Compl. Prayer for Relief (C) (seeking an order "instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharges"). Although Plaintiff purports to seek restoration of losses to the Plan, she does not allege what losses *the Plan* suffered because of the tobacco surcharge. *See* Compl. ¶ 77 and Prayer for Relief (J). Plaintiff's complaint as a facial matter, therefore, fails to establish statutory standing to bring a claim under Section 1109. *See Raytheon*, 24 F.4th at 751; *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 217 (D. Mass. 2020).

Nor can Plaintiff's claim withstand a factual attack based on the documents cited in the complaint. The structure of the Plan as a self-funded arrangement, as stated in the Plan document, precludes any legitimate contention that the Plan suffered harm in connection with Plaintiff's paying additional tobacco surcharge premiums for eligibility as a participant. *See* Def.'s Ex. 1 at 1-2. As a self-funded arrangement, the Plan has the structure of a defined-benefit

14

plan in which the participants receive vested benefits, as defined under the Plan document, through Bally's Management's funding the Plan's liabilities. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 440 (1999); *Winsor v. Sequoia Benefits*, 62 F.4th 517, 528 (9th Cir. 2023); *see also* Dep't of Labor, Advisory Op. 1992-02A (Jan. 17, 1992). As confirmed by the Plan document, which Plaintiff references in her complaint, *see* Compl., ¶ 40, Bally's Management pays for benefits under the Plan from its own assets along with employee contributions. *See* Def.'s Ex. 1 at 1, 109. Plaintiff has not alleged that her payment of a tobacco surcharge caused the Plan to be underfunded or threatened Bally's Management's payment of benefits. Because Plaintiff seeks only to address harm and restitution to herself (and other participants) and fails to provide specific allegations about harm to the Plan's financial integrity, her claims under Count II must be dismissed for lack of statutory standing. *See Raytheon*, 24 F.4th at 750-51.

For the same reason, Plaintiff fails to meet her burden of alleging sufficient facts for constitutional standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "There is no ERISA exception to Article III." *Thole v. U.S. Bank NA*, 590 U.S. 538, 547 (2020). To establish standing for a claim under Section 1109, Plaintiff must sufficiently allege an injury in fact to the Plan that would likely be redressed by judicial relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Patterson*, 76 F.4th at 494. The alleged injury must be concrete and particularized, not conjectural or hypothetical. *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017).

Plaintiff's focus on her alleged personal harm in paying the tobacco surcharge fails to address any particularized, non-speculative facts about how the Plan suffered any resulting harm. Rather, she only states in a conclusory manner that the Plan was injured. *See* Compl., ¶¶ 68, 72.

15

Those threadbare allegations are insufficient. *See DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35, 39 (1st Cir. 2023) ("For an injury in fact to be plausibly pled, it must be both concrete and particularized and actual or imminent, not conjectural or hypothetical." (cleaned up)); *Ass'n of Am. Physicians v. FDA*, 13 F.4th 531, 543-44 (6th Cir. 2021) (plausibility standard applies to standing). Moreover, Plaintiff's statement about Bally's Management's supposed fiduciary breaches in using the tobacco surcharge, in addition to its own contributions, in the context of a self-funded plan where those contributions are used to pay Plan benefits undercuts her conclusory assertions that the Plan was harmed. Plaintiff does not allege that the Plan was underfunded or that it failed to pay benefits. As such, she fails to identify any plausible harm to the Plan based on the alleged fiduciary breaches and prohibited transactions under Count II. *See Mira v. Nuclear Measurements*, 107 F.3d 466, 473 (7th Cir. 1997) ("even if the defendants did breach the fiduciary duties owed to the plaintiffs, in violation of ERISA, the Miras are not entitled to recovery of damages for that breach absent proof of an actual economic loss.").

Setting aside Plaintiff's insufficient conclusory allegations of harm to the Plan, she also fails to establish that her fiduciary breach and prohibited transaction claims under Count II are redressable. A claim is not redressable if the prospective benefits depend on an independent actor who retains broad and legitimate discretion that the Court cannot control or predict. *See Winsor*, 62 F.4th at 526. Plaintiff necessarily faces that redressability problem here in connection with her claims under Section 1109 because any "recoveries" the Plan receives will not benefit the Plan or any of its participants. Rather, it will only serve to benefit Bally's Management by reducing its contribution obligations.

Claims under Section 1109 are derivative in nature, brought on behalf of the plan, with the plan taking legal title to any recovery. *See Evans v. Akers*, 534 F.3d 65, 70 n.4 (1st Cir.

16

2008); *Graden v. Conexant Systems*, 496 F.3d 291, 295 (3d Cir. 2007). However, in this case, because the Plan is "self-funded," any recoveries for the Plan will have the practical result of reducing Bally's Management's obligations to fund benefits from its general assets. Nothing in the Plan document or ERISA prevents Bally's Management from adjusting its contributions to pay for the Plan's liabilities after the Plan receives a recovery. *See* Def.s' Ex. 1 at 1-2 (Plan obligations are paid from the company's general assets); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("Nor does ERISA establish any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans."). Moreover, nothing prevents Bally's Management, acting in its settlor capacity, from increasing generally the contribution obligations of all participants to offset its payment of any tobacco surcharge back to the Plan. *See Holdeman v. Devine*, 474 F.3d 770, 778 (10th Cir. 2007) (holding that employer was not acting as fiduciary when deciding whether to allocate funds to plan or elsewhere). Thus, an order from the Court for Bally's Management to return the tobacco surcharge to the Plan would not result in any additional benefits to Plaintiff or other plan participants. *See Winsor*, 62 F.4th at 527.[11] Plaintiff's fiduciary breach and prohibited transaction claims under Count II therefore fail to establish that the alleged violations are redressable.

For those reasons, the Court should dismiss Plaintiff's fiduciary breach and prohibited transaction claims under 29 U.S.C. § 1109 in Count II of Plaintiff's complaint for failure to establish constitutional and statutory standing.

---

[11] The First Circuit's decision in *Evans v. Akers* does not compel a contrary result. That case involved, unlike the Plan at issue here, a defined contribution pension plan composed of individual participant accounts into which possible recoveries by the Plan would be remitted. *See* 534 F.3d at 74-75; *see also* 29 U.S.C. § 1002(34). The welfare plan in this case is not composed of individual participant accounts.

**B. Plaintiff Fails to State a Statutory Claim Under Count I of the Complaint**

*1. Plaintiff fails to state a claim regarding the Plan's alleged lack of a reasonable alternative standard*

Plaintiff contends that Bally's Management does not provide and does not properly disclose a reasonable alternative standard for the Plan's tobacco-related outcomes-based program. *See* Compl., ¶¶ 37, 44-45, 47, 61, 65. She alleges "upon information and belief" that Bally's Management failed to include the required notice of a reasonable alternative standard in the plan materials distributed to participants. *Id*. ¶¶ 8, 40. However, the benefits guides that she references in her complaint undercut her allegations.

Contrary to Plaintiff's contentions, the Benefits Guide for the Plan notifies employees about the available alternative standard and whom to contact to request participation in an alternative program:

> Bally's is committed to helping you achieve your best health. If you think you might be unable to meet the standard for a reduction under this program, or if it is medically inadvisable for you to attempt to achieve the standard for the reduction under this program, you might qualify for an opportunity to earn the same reward (no tobacco surcharge) by different means. Contact Human Resources and we will work with you, to find a program with the same reward that is right for you in light of your health status.

Def.'s Ex. 3 at 13. The previous annual benefits guides similarly discuss the alternative standard available to participants interested in avoiding the tobacco surcharge. *See* Def.'s Ex. 4 at 8; Def.'s Ex. 5 at 7. The disclosure language in those benefits guides match substantively the sample disclosure language that the Department of Labor provides by regulation as satisfying the notice requirements. *See* 29 C.F.R. § 2590.702(f)(6). As a result, Plaintiff fails to state a statutory claim under 29 U.S.C. § 1182 by pleading herself out of court in reliance on documents that establish Bally's Management's compliance with the statute.

18

Despite referencing the annual benefits guides in the complaint, Plaintiff makes several allegations about Bally's Management's non-compliance with the reasonable alternative standard requirement that are directly contrary to the disclosures in those annual benefits guides. Plaintiff suggests that participants bear the cost of participating in the tobacco cessation program, or any alternative standard, *see* Compl., ¶ 38, and further contends that the "only avenue for smokers to avoid the surcharge is to quit smoking and then submit that change in status to the benefits department." Compl., ¶ 37. Not so. Bally's Management pays service providers to assist participants with quitting tobacco use. *See* Def.'s Ex. 3 at 13; Def.'s Ex. 4 at 8; Def.'s Ex. 5 at 7. The Plan fully covers the costs, without participant cost sharing, related to routine counseling for tobacco use. *See* Def.'s Ex. 1 at 8. Moreover, as the benefits guides make clear, tobacco users are advised to contact the human resources department if they are unable to satisfy the program or it is medially inadvisable for them to use the program. *See* Def.'s Ex. 3 at 13; Def.'s Ex. 4 at 8; Def.'s Ex. 5 at 7. Bally's Management will work with participants to fashion an appropriate program based on their health condition. *Id.* This participant-specific approach is permissible under the regulation, which states that plans are not required to determine a particular reasonable alternative standard in advance of an individual's request if the standard is made available upon request. *See* 29 C.F.R. § 2590.702(f)(4)(iv)(B).

The plan materials also undercut Plaintiff's claim that an alternative reasonable standard is not disclosed to Plan participants. *See* Compl., ¶¶ 39-40. Each year since Plaintiff has been employed with Bally's Chicago, the plan materials distributed to participants discuss the tobacco cessation program, the service providers who are available to help, and the availability of

19

alternative programs to address tobacco usage.[12]  Moreover, the benefits guides do not impose any time constraints on participants' ability to access the program or a reasonable alternative.

Plaintiff cannot evade dismissal of her complaint by misdirecting the Court away from the plan materials that contradict her allegations.  Plaintiff refers to and relies on the benefits guides in the complaint to advance her claims against Bally's Management.  *See* Compl., ¶ 8, 39, 40.  The Court therefore may consider the information in those documents in evaluating the sufficiency of the complaint.  *See Bazinet*, 113 F.4th at 15-16.  Moreover, when such documents contradict an allegation in the complaint, the document trumps the allegation.  *See Clorox*, 228 F.3d at 32.  Plaintiff cannot avoid the consequences of a document that she references and that forms the basis of her complaint when the document undercuts her claims.  *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 201 (S.D.N.Y. 2008) ("Where, as here, the pleader has notice of documents that are integral to its claims, the pleader may not avoid the Court's consideration of such documents simply because they contain material adverse to their claims.").  In this case, the annual benefits guides preclude the plausibility of Plaintiff's statutory claim under Count I of the complaint.

---

[12]  Plaintiff may attempt to evade this point by claiming that the Plan document (as opposed to the benefits guides) does not discuss the available reasonable alternative standard.  However, because the Plan document does not mention the outcomes-based program relating to tobacco usage, the regulations do not require that the Plan document to discuss the reasonable alternative standard.  *See* 29 C.F.R. § 2590.702(f)(4)(v); 29 C.F.R. § 2590.702(f)(4)(vi)- Example 6 (the example complies with the statute because, among other things, "The plan discloses, *in all materials describing the terms of the program*, the availability of the reasonable alternative standard . . .") (emphasis added)); *see also* 42 U.S.C. § 300gg-4(j)(3)(E) ("If plan materials disclose that such a program is available, without describing its terms, the disclosure under this subparagraph shall not be required.").

### 2. *Plaintiff fails to state a claim regarding the "full reward" requirement*

Plaintiff relies on the threadbare allegation that Bally's Management fails to pay a "full reward" to participants who satisfy the reasonable alternative standard under the Plan. *See* Compl., ¶¶ 38, 46, 61. Plaintiff contends that a full reward requires "reimbursements or pro rata adjustments to insurance premiums" when the participant satisfies the reasonable alternative standard, *id*. ¶ 38, but she does not provide any details about Bally's Management's payment or non-payment of the full reward. Plaintiff does not allege that she requested the reward, nor does she offer any details about how Bally's Management dealt with the issue on any other occasion. Rather, she offers conclusory allegations of non-compliance that lack detail about the administration of the reward. Those threadbare recitals of the elements of a cause of action fail to meet the plausibility standard to survive a motion to dismiss. *See Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

Setting aside Plaintiff's insufficient allegations regarding the administration of the full reward under the Plan, her contention that Bally's Management violated the statute fails as a matter of law. Plaintiff relies on a statement in the preamble to the Departments' final rule to contend that plan administrators must return past tobacco surcharges that the participant paid before she satisfied the outcome-based program or the reasonable alternative standard. *See* Compl., ¶¶ 29, 38; *see also* 78 Fed. Reg. at 33163. Although this retroactive payment requirement does not appear in the statute, *see* 42 U.S.C. § 300gg-4(j)(3)(D), or the regulatory text, *see* 29 C.F.R. § 2590.702(f)(4)(iv), Plaintiff contends the Departments' interpretation binds all plan administrators to reimburse participants for past premium differentials or surcharges.

As an initial matter, Plaintiff misdirects the relevant inquiry by contending that the Court must defer to the Departments' interpretation of "full reward" in the regulation. *See* Compl., ¶ 2

21

(relying on *Auer v. Robbins*, 519 U.S. 452 (1997)).  Plaintiff's case hinges on the agency's preamble "interpretation" because she must concede that the regulatory text does not require a retroactive repayment of the tobacco surcharge.  *See* 29 C.F.R. § 2590.702(f)(4)(iv).  Rather, the regulation simply repeats the general statutory requirement for a "full reward" that is not otherwise defined.  *See* 42 U.S.C. § 300gg-4(j)(3)(D).  As a result, the Court cannot defer to the agency's interpretation of its regulation because such deference would violate the anti-parroting canon.

When a regulation simply repeats a statutory phrase, "the question here is not the meaning of the regulation but the meaning of the statute."  *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006).  The Court does not defer to an agency's interpretation of a parroting regulation because "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language."  *Id*.  Based on that limitation, the Court does not apply *Auer* deference to the Departments' interpretation of the regulatory phrase "full reward" that they parroted from the statute.  *See Sun Capital Partners v. New England Teamsters*, 724 F.3dd 129, 141 (1st Cir. 2013).  Rather, the proper focus is the text of the statute.

Plaintiff's claim fares no better under the statute.  After the Supreme Court's decision in *Loper Bright v. Raimondo*, the Court no longer defers to an agency's interpretation of an ambiguous statute, but rather "independently interpret[s] the statute and effectuate[s] the will of Congress subject to constitutional limits."  603 U.S. 369, 395 (2024).  The Court must exercise its independent judgment in deciding whether an agency acted within its statutory limits.  *Id*. at 412-13.  Even where an agency's authorizing statute is ambiguous with respect to the question at issue, the agency's interpretation of that statute is not entitled to deference.  *See Rhode Island*

22

*Latino Arts v. National Endowment for the Arts*, --- F. Supp. 3d ---, 2025 WL 1009026, at *9 (D.R.I. April 3, 2025).  Under those rules, the agency's "interpretation" of the statutory phrase "full reward" in this case is not binding.

Turning to the words of the statute, Congress requires that the "full reward under the wellness program shall be made available to all similarly situated individuals."  42 U.S.C. § 300gg-4(j)(3)(D).  Those terms, standing on their own, do not answer the question whether the reward must be applied retroactively.  The statutory context, however, shows the legislative intent that the full reward is prospective in effect.  *See Roberts v. Sea-Land Serv.,* 566 U.S. 93, 101 (2012); *Rhode Island Latino Arts*, 2025 WL 1009026, at *10 (looking to the text and structure of the statute to determine whether the agency exceeded its authority).

Congress allows for plans to use wellness programs "to promote health or prevent disease."  42 U.S.C. § 300gg-4(j)(1)(A).  Plans are permitted to offer "premium discounts or rebates" or modify "otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention."  29 U.S.C. § 1182(b)(2)(B).  Those rewards act as a financial inducement for participants, in the context of tobacco cessation programs, to achieve better health by quitting their use of tobacco products.

The statute further specifies that those rewards "may be in the form of a *discount or rebate of a premium or contribution*, a waiver of all or part of the cost-sharing mechanism (such as deductibles, co-payments, or coinsurance), *the absence of a surcharge*, or the value of a benefit that would otherwise not be provided under the plan."  42 U.S.C. § 300gg-4(j)(3)(A) (emphasis added).  The ordinary meanings of "reduction" and "absence" do not connote a retroactive payment or reimbursement.  *See* "Absence." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/absence (accessed 4 May 2025)

23

(defining "absence" as "a state or condition in which something expected, wanted, or looked for is not present or does not exist"); "Discount." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/discount (accessed 5 May. 2025) (defining "discount" as "a reduction made from the gross . . . amount or value of something"); *see also City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020) (terms and phrases used in a statute are, in the absence of a particular statutory definition, construed according to their plain and ordinary meaning). Rather, the statute's qualifying those inducements in terms of an "absence" of a surcharge strongly suggests a prospective withholding of the surcharge that the participant would otherwise be required to pay on an ongoing basis if she had not satisfied the wellness program. That prospective absence of a surcharge aligns with the statutory purpose of providing incentives for participants to engage as soon as possible with programs that promote health and help prevent disease. *See Gundy v. United States*, 588 U.S. 128, 141 (2019) (Court interprets words in statute in context and often looks to history and purpose of statute).

Nor do the temporal designations Congress uses in the statute mandate a retroactive payment of the reward. The statute only addresses when the reward must be made available for participants whose medical conditions or other circumstances make it inadvisable to participate in the outcome-based program. *See* 42 U.S.C. § 300gg-4(j)(3)(D)(i)(I)-(II). The "period" when those circumstances are relevant define when the reasonable alternative program must be made available, not the amount of the reward. *Id*.

Neither the text nor the statutory structure indicates a Congressional intent to impose a retroactive payment requirement as part of the "full reward." Rather, the best interpretation of statute requires plan administrators to effect a prospective elimination of an otherwise applicable surcharge when the participant satisfies the outcome-based program or alternative reasonable

24

standard.  Plaintiff's statutory claim based on a contrary interpretation of "full reward" therefore fails as a matter of law.

### B.  Plaintiff Fails to State a Claim Under Count II

#### 1.  *Plaintiff fails to state a fiduciary breach claim*

Under Count II, Plaintiff alleges that Bally's Management violated the duty of loyalty, *see* 29 U.S.C. § 1104(a)(1)(A)(i), by collecting a tobacco surcharge that reduced the company's contributions to the Plan.  *See* Compl. ¶ 72.  However, the claim fails because Bally's Management cannot violate the duty of loyalty by requiring participants to make contributions to the Plan that the plan administrator uses to pay benefits.  Additionally, because Plaintiff's fiduciary breach claim is predicated on an alleged violation of the statutory anti-discrimination provisions, *id.* ¶ 71, her claim fails based on the documents she references in her complaint.  *Id*. ¶ 40.  Those documents show that Bally's Management provided a reasonable alternative standard for avoiding the tobacco surcharge.  *See* Def.'s Ex. 3 at 13.

As a threshold matter, Plaintiff cannot legitimately claim that Bally's Management is precluded from requiring contributions from employees or changing contribution levels as a condition for employees' participating in or gaining eligibility under the Plan.  *See Spink*, 517 U.S. at 890.  Those determinations regarding contribution sharing between Bally's Management and employee participants are settlor decisions about plan design that do not implicate fiduciary status or fiduciary responsibility.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444-45 (1999); *see also Hutchins*, 2025 WL 40594, at *3.  Because Bally's Management's decision to set or adjust the contribution levels of employees is a settlor function, Plaintiff cannot state claim for a breach of the duty of loyalty based on any alleged conflict between Bally's Management and the employees relating to those decisions.  *See Coulter v. Morgan Stanley & Co. Inc.*, 753

F.3d 361, 368 (2d Cir. 2014) (conflicts may exist between an employer's interests and an employee's interests and that, as a result, settlor functions may detrimentally impact a benefits plan); *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995) (the existence of conflicts between employers and employees is inevitable and does not give rise to fiduciary duty).

Although Plaintiff alleges that the tobacco surcharge resulted in Bally's Management's paying less in contributions to the Plan, she cannot state a claim based on those allegations because the statute does not impose any funding or vesting requirements on welfare plans. *See Spink*, 517 U.S. at 890. Relatedly, the Plan document in this case permissibly allows Bally's Management to require employee contributions to fund Plan benefits. *See* Def.'s Ex. 3 at 1.

Nor can Plaintiff's claim rest on suggesting that the fiduciary's acting in the interest of the Plan's participants, *see* 29 U.S.C. § 1104(a)(1)(A)(i), requires maximizing the pecuniary benefits of the participants by reducing their contributions to the Plan. *See Hutchins,* 2025 WL 40594, at *4. Rather, a fiduciary's duty is to ensure that the participants receive the full benefit guaranteed to them by the plan documents. *Id*. at *6; *see also* 29 U.S.C. § 1104(a)(1)(D). Plaintiff's case fails under those rules because she has not alleged (nor could she legitimately allege) that Bally's Management threated the financial integrity of the Plan or that its actions jeopardized the payment of benefits. *See* Def.'s Ex. 1 at 1 (requiring participant contributions as an eligibility requirement for participation in the Plan). The crux of Plaintiff's complaint is that she should not be required to pay additional contributions as required for her participation in the Plan, but that contention cannot form the basis of a fiduciary breach claim. *See Foltz v. U.S. News & World Rep., Inc*., 865 F.2d 364, 373 (D.C. Cir. 1989) ("Section 404 creates no exclusive duty of maximizing pecuniary benefits. Under ERISA the fiduciaries' duties are found largely in the terms of the plan itself.").

26

Relatedly, the duty of loyalty does not preclude the plan administrator's deriving an accompany benefit in managing or implementing the plan. *See Ellis v. Fidelity Management*, 883 F.3d 1, 5 (1st Cir. 2018). Rather, to state a duty of loyalty claim, Plaintiff must establish that the operative motive of the fiduciary was to further its own interest. *Id*. at 6.; *see also Reetz v. Aon Hewitt Inv. Consulting*, Inc., 74 F.4th 171, 182 (4th Cir. 2023) (plaintiff must establish the fiduciary's self-interest motivated the allegedly conflicted action). Plaintiff fails in this case to advance any such plausible allegation about Bally's Management's impermissible motive because the Plan materials she references in her complaint show that it implemented the Plan and the wellness program to promote health or prevent disease in compliance with the statute. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(1)(A).

The benefits guides on which Plaintiff relies in her complaint state that the reason for the tobacco surcharge is to encourage employees to become tobacco free. *See* Def.'s Ex. 3 at 13. Bally's Management currently retains UMR to help employees develop healthier habits. *Id*. If the employees cannot participate in UMR's program, for health reasons or otherwise, they are directed to contact the human resources department to request another program that will help them eliminate the tobacco surcharge ("no tobacco surcharge"). *Id*.; *see also* Def.'s Ex. 4 at 8; Def.'s Ex. 5 at 7. Those documents preclude any plausible inference from Plaintiff's threadbare allegation that Bally's Management was motivated by self interest in requiring a tobacco surcharge. Rather, it was following statutory law when imposing that permissible contribution requirement under the wellness program. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(1)(A).

### 2. *Plaintiff fails to state a prohibited transaction claim*

Plaintiff also contends under Count II that Bally's Management engaged in alleged prohibited transactions by using the Plan's assets (Plaintiff's tobacco surcharge payments)[13] to reduce its contributions to the Plan. *See* Compl., ¶¶ 73-75. Those allegations are mostly reiterations of her duty of loyalty claim, which fails owing to a lack of plausible fiduciary self-dealing, but the prohibit transaction claims require in addition that Plaintiff establish Bally's Management's improperly causing a "transaction" involving Plan assets. *See* 29 U.S.C. §§ 1106(a)(1)(D), 1106(b)(1); *Spink*, 517 U.S. at 888 (Section 1106 "prohibits fiduciaries from involving the plan and its assets in certain kinds of business deals . . . Congress enacted [§ 1106] to bar categorically a transaction that [is] likely to injure the pension plan."). Critically, she has not plausibly alleged that Bally's Management engaged in a "transaction" that is prohibited by statute. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004); *Markum v. Variable Annuity Life Ins. Co.*, 88 F.4 602, 612 (5th Cir. 2023) (assessing whether an alleged violation under Section 1106 involved a qualifying "transaction").[14]

In *Spink*, the Supreme Court made clear that using plan assets to pay plan benefits is not the type of "transaction" prohibited by ERISA. *See Spink*, 517 U.S. at 892-93; *see also Chao v. Hagemayer North America*, 2006 WL 8443663, at *8-9 (D.S.C. Oct. 20, 2006). That determination undercuts Plaintiff's prohibited transaction claim because the Plan document she references indicates the tobacco surcharges (among other employee contributions) are used to

---

[13] For purposes of this motion, Defendant will assume that Plaintiff's contributions to the Plan are Plan assets. *See* 29 C.F.R. § 2510.3-102(a). Defendant reserves the right, if necessary, to proffer facts at the appropriate time showing that those contributions were not Plan assets.

[14] Under *Wright v. Oregon Metallurgical Corporation*, claims under Section 1106(a) and Section 1106(b) require a prohibited "transaction." 360 F.3d 1090, 1101 (9th Cir. 2004); *Hutchins,* 2025 WL 40594, at *8.

pay benefits under the Plan.  *See* Def.'s Ex. 1 at 1 ("Employees help cover some of the costs of covered benefits through contributions, Deductibles, out-of-pocket amounts, and Plan Participation amounts as described in the Schedule of Benefits.").  Although Plaintiff contends Bally's Management used the tobacco surcharge to reduce its obligations to the Plan as a supposed act of self-dealing, *see* Compl., ¶ 73, that allegation is simply a derogatory characterization of Bally's Management's permissible use of plan assets to pay benefits.  As the district court in *Hutchins v. HP Inc.* recently held, the employer's use of plan assets, consistent with the plan document, to pay benefits cannot form the basis of a prohibited transaction claim even if the employer receives an alleged corresponding reduction in its contribution obligations. *See Hutchins,* 2025 WL 40594, at *5, 8.

Plaintiff's allegations are insufficient to state a claim for another reason.  She neither alleges facts nor proffers a plausible inference that the Plan was not adequately funded because of the plan administrator's use of the tobacco surcharge to pay plan benefits.  As a result, she fails to show how Bally's Management's using the tobacco surcharge to fund benefits falls within the types of "commercial bargains that present a special risk of plan underfunding" or "involve uses of plan assets that are potentially harmful to the plan" that the Supreme Court identified as the genus of transactions Congress meant to prevent.  *Spink,* 517 U.S. at 893. Because the complaint does not present those factual scenarios, Plaintiff fails to state a prohibited transaction claim.  *See Hutchins*, 2025 WL 40594, at *8.

### C. Plaintiff Lacks a Cause of Action Because She Failed to Exhaust the Plan's Administrative Remedies

Even if Plaintiff's allegations were not undercut by the benefits guides she references for her statutory and fiduciary breach claims, she lacks a cause of action under Counts I and II for an additional reason.  Although Plaintiff alleges paying a tobacco surcharge as part of her

contribution obligation as a participant in the Plan, she does not allege requesting to participate in the Plan's tobacco cessation program or any alternative program for avoiding the tobacco surcharge. Nor does Plaintiff allege that she filed an administrative appeal with Bally's Management challenging the application of the tobacco surcharge. Plaintiff's failure to exhaust the Plan's administrative remedies, as stated in the Plan document, strips her of a cause of action challenging the tobacco surcharge.

ERISA requires an administrative review process for "any participant whose claim for benefits has been denied." 29 U.S.C. § 1133(2). To bring suit under a benefits plan subject to ERISA, a beneficiary must exhaust the plan's administrative remedies. *See Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 51-52 (1st Cir. 2014); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013) (noting that "courts of appeals have uniformly required that participants exhaust internal review before bringing a claim [under ERISA] for judicial review"). Exhaustion minimizes frivolous lawsuits, promotes consistent treatment of claims, and enhances the ability of fiduciaries to interpret plan provisions. *See Kinkead v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 68 (8th Cir. 1997). Although a failure to exhaust administrative remedies is an affirmative defense, the Court may dismiss a complaint for failure to state a claim where the plaintiff pleads facts that could only plausibly suggest that she failed to exhaust available administrative remedies before filing suit. *See Tafel v. Golub Corp.*, 2012 WL 280729, at *2 (N.D.N.Y. Jan. 31, 2012).

In this case, the Plan document (which Plaintiff references) states that payment of contributions is an eligibility requirement for participation in the Plan. *See* Compl., ¶¶ 12, 40, 44; Def.'s Ex. 1 at 15, 19. The Plan document further provides that a participant who receives an adverse benefit determination is entitled to file an appeal challenging the decision. *See* Def.'s

30

Ex. 1 at 90-91.  Under the regulation, an adverse benefits determination includes a reduction in payment that is based on a determination of an employee's eligibility to participate in the Plan.  *See* 29 C.F.R. § 2560.503-1(m)(4).

Plaintiff alleges in the complaint that Bally's Management deducted monies from her paycheck to cover a tobacco surcharge as a condition for her participation in the Plan when allegedly it should have covered that premium.  *See* Compl., ¶¶ 12, 44, 72.  She relatedly alleges that the tobacco surcharge is an "impermissible cost-shifting scheme" that imposes higher eligibility costs on participants.  *Id*. ¶¶ 9-11.  Those allegations amount to a claim that Plaintiff received an adverse benefit determination (as defined by regulation).  *See* 29 C.F.R. § 2560.503-1(m)(4).  But Plaintiff failed to avail herself of the Plan's administrative appeal process for challenging the adverse benefit determination.  *See* Def's Ex. 1 at 90-91.  The Court should therefore dismiss her complaint for failure to exhaust administrative remedies.

Plaintiff may contend that the exhaustion requirement does not apply because she raises statutory claims in her complaint.  However, to meet the exhaustion requirement, a claimant may not avoid the administrative review process by dressing up a denial-of-benefits challenge as a breach-of-fiduciary-duty claim.  *See Jones v. Aetna*, 943 F.3d 1167, 1169 (8th Cir. 2019).  The First Circuit has observed that claims for benefits based on ERISA plans are contractual in nature even if they are "artfully dressed in statutory clothing."  *Drinkwater v. Metro. Life Ins. Co*., 846 F.2d 821, 826 (1st Cir. 1988).  If the Court were "to allow claimants to play this characterization game, then the exhaustion requirement would be rendered meaningless."  *Id*.; *see also Madera v. Marsh*, 426 F.3d 56, 63 (1st Cir. 2005).  For that reason, Plaintiff should not be excused from exhausting administrative remedies before raising a claim relating to an alleged improper contribution requirement.

31

Although Plaintiff challenges the Plan's tobacco surcharge based on the supposed absence of a reasonable alternative standard for the outcome-based tobacco program, the crux of her complaint is a denial of benefits claim based on her payment of an enhanced premium that the Plan administrator should have paid.[15]  Those claims are subject to administrative exhaustion under the Plan.  *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223–24 (11th Cir. 2008) (finding exhaustion requirement applies to fiduciary breach claim); *D'Amico v. CBS Corp.*, 297 F.3d 287, 291–93 (3d Cir. 2002) (requiring exhaustion because the claim of fiduciary breach was actually a claim for benefits); *Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1484 (9th Cir. 1995) (rejecting argument that COBRA statutory claim excused plaintiff from exhaustion); *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990) (holding that district court was correct in subjecting breach of fiduciary claims to exhaustion requirement); *but see Smith v. Sydnor*, 184 F.3d 356, 363–65 (4th Cir. 1999) (holding that a plaintiff need not exhaust administrative remedies before asserting a statute-based ERISA claim).

Nor has Plaintiff pled any facts showing that it would have been futile for her to pursue the Plan's administrative appeal process.  *See Drinkwater*, 846 F.2d at 826 (for the futility exception to apply, a blanket assertion, unsupported by any facts, is insufficient to call this exception into play).  She has not alleged, nor could she legitimately claim, that the Plan lacks an administrative appeal process.  *See* Def.'s Ex. 1 at 90-91.  Plaintiff also admits she was aware,

---

[15]  Although the First Circuit distinguishes between contract-based and statute-based ERISA claims, it has not addressed whether statute-based claims require plaintiffs to exhaust administrative remedies.  *See Guevara Ortiz v. Union Independiente de Empleados*, 540 F. Supp. 3d 169, 174 (D.P.R. 2021).  Even if Plaintiff's statutory claims were not "dressed up" contract claim (benefits claim), the Court should follow the weight of authority from other circuit courts, cited *infra*, that a participant must exhaust the plan's administrative remedies for statutory claims before filing suit.

based on statements in her pay stubs, that she paid the tobacco surcharge as a required contribution to the Plan.  *See* Comp., ¶ 44.[16]  Moreover, she could have raised the issue of a purportedly improper tobacco surcharge, or advanced a request to pursue an alternative program, with the human resources department at Bally's Chicago.  *See* Def.'s Ex. 3 at 13.[17]  Plaintiff's complaint makes clear that she did not pursue any of those administrative remedies nor does she allege how pursuing that process would have been futile.  *See Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (plaintiff must make a clear and positive showing that pursuing available administrative remedies would be futile).  Plaintiff's failure to do so deprives her of a cause of action under Counts I and II of her complaint.

## CONCLUSION

Based on the forgoing, the Court should dismiss Count II of Plaintiff's complaint for lack of constitutional and statutory standing, or alternatively, for failure to statute a claim.  The Court should also dismiss Count I of Plaintiff's complaint for failure to state a claim.

---

[16]  Plaintiff's allegation that the surcharge appeared in her pay stub distinguishes her situation from cases where courts have excused the exhaustion requirement when the participant was unaware of being overcharged for plan benefits.  *See Negron v. Cigna*, 300 F. Supp. 3d 341, 353 (D. Conn. 2018).

[17]  The Plaintiff's counsel in this case, Kimberly Dodson, filed an administrative claims appeal challenging the tobacco surcharge in another matter on behalf of plaintiff participants in the Aurora Health Welfare Benefit Plan.  *See Rogers v. Advocate Aurora Health*, 1:24-cv-8664-LAH (N.D. Ill. May 1, 2025), Doc. 52-1.

**LOCAL RULE 7(c) STATEMENT**

Defendant Bally's Management Group, LLC is not requesting an oral argument or

evidentiary hearing in connection with its motion to dismiss.

Dated:  May 20, 2025

Respectfully submitted,

JOSHUA D. NADREAU
Bar No. 10135
Fisher & Phillips LLP
200 State Street, 13th Floor
Boston, MA 02109
617-722-0044/ jnadreau@fisherphillips.com

s/Geoffrey Forney
GEOFFREY FORNEY
Fisher & Phillips LLP
One Monument Square, Ste. 201
Portland, ME 04101
202-615-8315/ gforney@fisherphillips.com

34