# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TRACY A. WILLIAMS, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>BALLY'S MANAGEMENT GROUP, LLC<br><br>    Defendant. | Civil Action No.: 1:25-00147-MSM-PAS<br><br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Tracy A. Williams, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Bally's Management Group, LLC ("Bally's" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.      It is both unfair and unlawful for companies like Bally's to impose discriminatory and punitive health insurance surcharges on employees who use nicotine products. This lawsuit challenges Bally's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA"). Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "*full reward*"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under the Bally's Welfare Benefit Plan (the "Plan"), Bally's imposes a

discriminatory tobacco surcharge without providing participants with a reasonable alternative standard and fails to provide notice of the availability of a reasonable alternative standard, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that "must be satisfied" to qualify for the statutory exception or safe-harbor, which employers can invoke only if they affirmatively demonstrate full compliance with all these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.      The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of these programs being a "subterfuge for discriminating based on a health factor." The regulations make clear that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows all participants to obtain the full reward, including retroactive refunds of surcharges paid while completing the alternative standard. A wellness program must be genuinely designed to improve

health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Bally's Plan fails to clearly establish a reasonable alternative standard, does not notify employees that such an alternative is available, does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

5.      Outcome-based programs,[2] such as smoking cessation programs, must offer a "*reasonable* alternative standard" for all individuals unable to meet the initial health requirement,

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[2] "An outcome-based wellness program is a type of health-contingent wellness program that

ensuring access to the same "full reward," including avoiding the tobacco surcharge for the entire plan year. Put simply, a "reasonable alternative standard" is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). That means, even if an individual takes until the end of the year to complete the wellness program, he or she must be provided with retroactive reimbursements for the months the individual paid the surcharge prior to satisfying the alternative standard. The Departments made this requirement clear when they stated it is "[t]he intention of the Departments in these final regulations is that, regardless of the type of wellness program, *every individual participating in the program should be able to receive the full amount of any reward or incentive*, regardless of any health factor." 78 Fed. Reg. 33158, 33160 (emphasis added). Employers must also clearly communicate the availability of this alternative standard in all plan materials referencing tobacco-related premium differentials, including plan documents and summary plan descriptions ("SPDs").

6.     The Plan fails to offer the requisite reasonable alternative standard as mandated by law because it fails to provide "all similarly situated individuals" with the "full reward." Plan materials make clear that if participants complete the alternative standard, the surcharge will stop on a *prospective* basis. There is no indication that participants receive reimbursement or credit for past surcharges paid in the same Plan year. By failing to provide retroactive reimbursement or pro rata adjustments to ensure participants who satisfy the alternative standard receive the full reward, Defendant denies participants the opportunity to achieve the "full reward," as required by law.

---

requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

This failure prevents "all similarly situated individuals" from obtaining the "full reward," rendering the wellness program discriminatory and noncompliant with regulatory standards.

7.      Moreover, the Plan fails to meet the notice requirements necessary for a lawful wellness program. Materials describing the tobacco surcharge and alternative standard do not include sufficient disclosures about how the alternative standard provides the "full reward." Critically, none of the Plan materials inform participants of their right to a second alternative to avoid the surcharge: that their physicians' recommendations for alternative standards will be accommodated. These omissions deprive participants of critical information needed to fully understand and exercise their rights to avoid the surcharge. Because the wellness program does not meet the necessary criteria under the statute to be considered a genuine "program[] of health promotion and disease prevention," Defendants cannot assert an affirmative defense that their wellness program is non-discriminatory, meaning the tobacco surcharge is unlawful and discriminatory in violation of ERISA.

8.      Plaintiff is an employee of Bally's who paid, and continues to pay, the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

9.      Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Bally's from continuing to profit from its violations under 29 U.S.C. § 1109.  Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of

herself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

10.     Plaintiff Tracy A. Williams is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Cook. Plaintiff is an employee of Bally's Chicago Operating Company, LLC, a division of Bally's Corporation, who paid a tobacco surcharge in the form of increased premiums for health insurance of roughly $30 per paycheck (roughly $780 annually) offered through Bally's during her employment. Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

11.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

12.     Bally's is a management company associated with Bally's Corporation, a global casino-entertainment company headquartered in Providence, Rhode Island, operating casinos, interactive gaming platforms, and sports betting services across multiple states and internationally.

13.     Bally's is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). Bally's employs thousands of individuals and there are over 5,000 participants in the Plan as of December 31, 2023. Bally's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and § 28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the

number of class members is over 100, many of whom have different citizenship from Defendant.

Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15.    This Court has personal jurisdiction over Defendant because it is headquartered in this District, and Defendant has purposefully availed itself of the privilege of conducting business in Rhode Island.

16.    Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

### I.    STATUTORY AND REGULATORY REQUIREMENTS

17.    ERISA contains a clear prohibition: group health plans may not charge higher premiums to similarly situated individuals based on a health factor, such as tobacco use. *See* 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).[3] Together, these statutes (ERISA and the PHSA) regulate the administration of group health plans and the use of outcome-based wellness programs in connection with premium differentials. Specifically, the statutes state, in relevant part:

> A group health plan . . . may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor . . . .

18.    There is only one narrow exception. Congress carved out a statutory safe harbor allowing plans to provide "premium discounts or rebates"—positive incentives—in exchange for

---

[3] Section 300gg-4 was added to ERISA through incorporation with the passing of the Affordable Care Act and the Public Health Service Act ("PHSA"). *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158–170 (June 3, 2013) (hereinafter the "**Final Regulations**"); *see also* 29 C.F.R. § 2590.702(f) and 45 C.F.R. § 146.121(f) (implementing regulations for §§ 1182 and 300gg-4, respectively).

participation in wellness programs that promote health and prevent disease. *See* §§ 1182(b)(2)(B) and 300gg-4(b)(2)(B). Those provisions state:

> Nothing in paragraph (1) shall be construed . . . to prevent a group health plan . . . from establishing ***premium discounts*** or ***rebates*** or ***modifying otherwise applicable copayments or deductibles*** in return for adherence to ***programs of health promotion and disease prevention***."

(emphases added). But this safe harbor is limited. It permits discounts or rebates, not penalties. The difference is not semantic: discounts reward improvement or participation while surcharges penalize individuals for a health condition.

19.    Importantly, the statutory provisions governing wellness programs are implemented and clarified through a dual regulatory framework. The Department of Labor ("DOL") issues implementing regulations for ERISA plans at 29 C.F.R. § 2590.702(f), while the Department of Health and Human Services ("HHS") issues substantively identical regulations for group health plans governed by the PHSA at 45 C.F.R. § 146.121(f). These regulations are jointly developed and enforced by the DOL, HHS, and the Department of Treasury (collectively, the "Departments"). *See* Final Regulations, 33159

20.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the DOL the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power

to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

21.    Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care Act ("ACA") and PHSA in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

22.    The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden is on the employer to prove that it complied with *all* the necessary regulatory criteria and that the surcharge is non-discriminatory.  *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020 (2025) ("the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*." (citation omitted)).

23.    Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . .") (emphases added).

24.    In satisfying each of the criteria, plans can ensure that wellness programs are "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* They prevent employers from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. In that case, any premium differentials imposed based on a health factor violate the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if <u>all</u> of the [] requirements are satisfied***."). In sum, a wellness program that fails to satisfy each criterion is not a legitimate health promotion initiative but an unlawful penalty that discriminates based on health status, in direct violation of ERISA's protections).

### A. Regulatory Criteria

25.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

10

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards:  "The ***full reward*** under the outcome-based wellness program must be available to ***all similarly situated individuals***."  29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

26.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

27.     Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable

design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

28.    A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive*** . . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

29.    The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id.* The Final Regulations

conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

30.     For health contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). In addition, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Thus, plans that charge their participants more and fail to provide a reasonable alternative standard or the requisite notice violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

31.     Bally's tobacco surcharge program violates ERISA because it is not "program[] of health promotion or disease prevention." 29 U.S.C. § 1182(b)(2)(B). To qualify for ERISA's safe harbor under § 1182(b)(2)(B), a wellness program must offer a clearly defined, reasonable alternative standard and ensure that all participants who satisfy it receive the full reward. Bally's Plan fails to meet these requirements. Specifically, Defendant's wellness program imposes a tobacco surcharge without providing retroactive reimbursement or adhering to the strict notice and procedural requirements mandated by law.

32.    Under the Plan, tobacco users are charged a $30 surcharge per paycheck, equating to an annual amount of approximately $780 annually. While participants may enroll in a tobacco cessation program, such as the Quit for Life or CARE program, completion of the program only removes the surcharge ***prospectively***. There is no provision for retroactive reimbursement, regardless of when participants complete the program, in direct violation of ERISA's requirement to provide the "full reward" to all similarly situated individuals.

33.    Plan materials state that participants who successfully complete the tobacco cessation program can have the surcharge removed, as confirmed in the 2024 Benefits Guide, which states: "***Upon completion of the applicable program***, employees can submit their certificate of achievement to Human Resources in order to have the tobacco surcharge eliminated." (Emphasis added.) A 2023 Benefits Guidebook states the same. By failing to provide retroactive reimbursements, Defendant denies participants the "full reward," rendering the wellness program discriminatory and noncompliant with ERISA's regulatory framework.

34.    From at least 2023 through 2025, and, upon information and belief, for years prior, Defendant charged an annual tobacco surcharge. Each plan year, Defendant administered a policy on all participants who self-identify as someone who uses tobacco products with a periodic and regular surcharge ($30) that was deducted from each of their paychecks. Plaintiff paid this surcharge during this period and continues to pay it.

35.    Bally's also failed to provide the required notice to participants. As discussed, ERISA's implementing regulations require employers to clearly communicate the availability of a reasonable alternative standard to participants in all plan materials discussing premium differentials, including the plan document and SPD. Defendant failed to meet these notification requirements.

14

36.     While the Benefits Guidebooks mention the tobacco surcharge and a smoking cessation program, they failed to provide information on a *reasonable* alternative that would enable participants to avoid the surcharge for the entire year, violating the notice requirements. These materials also omit any mention that participants' physicians' recommendations will be accommodated, as required by ERISA's wellness program regulations. These deficiencies deprive participants of the information necessary to fully understand and exercise their rights.

37.     Defendant also failed to include information about the smoking cessation program in the Plan Document or the SPD and, upon information and belief, Defendant has failed to include the required disclosure regarding physician recommendations in other materials discussing the tobacco surcharge and smoking cessation programs. Without this disclosure, participants are unaware of their rights under ERISA and cannot access alternative means to avoid the surcharge.

38.     Had Defendant provided participants with adequate notice of the availability of a reasonable alternative standard, including a notice of participants' rights to have their personal physician's recommendations accommodated, Plaintiff and similarly situated individuals could have taken steps to avoid or reduce the unlawful tobacco surcharge. Defendant's failure to provide this required notice deprived participants of the opportunity to exercise their rights under ERISA and directly contributed to the financial harm suffered by the Class. By failing to meet the regulatory requirements, Bally's tobacco surcharge is discriminatory, and in clear violation of ERISA and its implementing regulations

39.     Because Defendant failed to provide a *reasonable* wellness program that allows participants to receive the "full reward"—avoiding the surcharge for the entire plan year—its wellness program fails to comply with the statutory and regulatory requirements, and, in turn, the

15

program cannot qualify for the safe-harbor exception. Accordingly, the Plan violates ERISA's anti-discrimination provisions.

### III.    DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

40.    Defendant controls the administration of the tobacco surcharge, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks. These amounts are not placed in a trust account for the Plan but are instead deposited into Bally's general accounts.

41.    By retaining these ill-gotten funds, Bally's earns interest on the withheld surcharges and reduces its own financial contributions to the Plan. Bally's did not use these funds to offset the premiums of participants, but instead used the funds to lower its own contributions to the Plan. This practice constitutes self-dealing and violates ERISA's fiduciary duty requirements, which mandate that Plan assets be managed exclusively in the interest of participants and beneficiaries.

42.    Defendant has fiduciary responsibilities to ensure that these funds are used to support coverage for participants' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant increased its own bottom line allowing it realize financial benefits it would not have otherwise realized without imposing these surcharges, in violation of ERISA's fiduciary duty standards. In sum, these practices demonstrate that Defendant's wellness program is an unreasonable, revenue-generating scheme disguised as a health initiative, directly contravening ERISA's requirements and purpose

### CLASS DEFINITION AND ALLEGATIONS

43.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

44.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

45.     Excluded from the Class are Bally's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

46.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

47.     The proposed Class and Subclass meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

48.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

49.     **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a.  Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

   b.  Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

   c.  Whether Defendant notified participants in all the plan materials describing the surcharge of the avenues by which participants could avoid the tobacco surcharge and obtain the "full reward";

17

d.  Whether Defendant's wellness program violates ERISA and the applicable regulations;

e.  Whether Defendant properly notified participants of the availability of reasonable alternative standard to avoid the tobacco surcharge;

f.  Whether Defendant provided the required statement that participants' personal physicians' recommendations would be accommodated;

g.  Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge and using that money to offset its own costs associated with the Plan;

h.  Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its tobacco surcharge, "wellness program," and Plan communications to ensure compliance with ERISA and applicable regulations;

i.  The appropriate mechanisms to determine damages on a class-wide basis

50.  **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

51.  **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and was harmed by Defendant's misconduct in that she was assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiff.

52.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

53.    Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182)

54.    Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–53 of this Complaint.

19

55.    Defendant improperly imposed an unlawful surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $30 per paycheck on participants who use nicotine and by failing to offer a compliant wellness program, Defendant violates ERISA § 702(b), 29 U.S.C. § 1182(b).

56.    29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on nicotine users, without offering a reasonable alternative standard that provides the "full reward" to "all similarly situated individuals," and by failing to notify participants of their rights in all Plan communications regarding the surcharge, Defendant's wellness program fails to qualify under the safe-harbor exception and constitutes a discriminatory wellness program, discriminating against individuals like Plaintiff who was designated as tobacco users.

57.    Defendant's imposition of the tobacco surcharge is a violation of ERISA § 702 and the implementing regulations, including but not limited to 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). Defendant's "wellness program" fails to provide the "full reward" because it fails to retroactively reimburse participants who satisfy the alternative standard. Participants who complete the program may be able to avoid the surcharge once completing the program but on a *prospective* basis only. To comply with ERISA and the regulations, the Plan must issue retroactive reimbursements, regardless of when participants complete the program. By failing to provide an

avenue for participants like Plaintiffs to obtain the "full reward" of the wellness program, Bally's failed to provide a compliant wellness program.

58.    Additionally, the Plan's tobacco wellness program does not provide the notice to participants. Plan-related materials fail to provide notice of an alternative standard that provides the "full reward" and fail to provide the requisite statement that recommendations of participants' individual physicians would be accommodated. By depriving participants of the information needed for exploring avenues to avoid the surcharge, Defendant violated ERISA and the Final Regulations regarding wellness programs, and the surcharge is discriminatory in violation of ERISA. Further, Defendants failed to include the requisite notice of the wellness program in the Plan document or the SPD, in violation of the mandate in the Final Regulations requiring that ERISA plans contain this information in these core documents.

59.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and members of the Class may enforce pursuant to 29 U.S.C. § 1132(a)(3).

60.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

61.     Plaintiff re-alleges and incorporates herein by reference the prior allegations in paragraphs 1–53 of this Complaint.

62.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

63.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

64.     Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its surcharge programs, including the decision not to offer a compliant wellness program. Each year, Defendant exercised discretionary authority with respect to the eligibility criteria and penalties for nicotine use, failed to provide participants with the necessary notices and disclosures, and failed to periodically review the terms of the surcharge, the wellness program, and Plan-related communications to ensure compliance with ERISA.

65.     Bally's controlled and disseminated to all employees the contents of the Benefit Guidebooks describing the premium differential for tobacco users but failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges, regardless of when they satisfied the alternative standard, in violation of the regulations. Bally's also failed to provide the necessary disclosure regarding the recommendations of participants' physicians being accommodated. Further, Bally's failed to adequately and regularly review the terms of its tobacco surcharge, "wellness program," and the accompanying communications to participants to ensure they complied with ERISA and the Final Regulations. Year after year, Defendant failed to properly institute safeguards against administering an unlawful program that violated the statute and shortchanged participants. These actions reflect Bally's active role in administering a non-compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

66.     Bally's breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Bally's acted disloyally by causing Plaintiff and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

67.     As a result of the imposition of the unlawful and discriminatory tobacco surcharges, Bally's enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendant breached its fiduciary duties by prioritizing its own financial interests over the interests of Plan's participants by deducting from participants' paychecks the amounts of the surcharges without providing an alternative avenue (aside from quitting tobacco) to avoid the surcharge. By offering a "wellness program" that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco wellness program,

Bally's administered a program that disproportionately benefited itself at the expense of Plan participants. By collecting unlawful surcharges and using them to offset its own contributions to the Plan, Bally's was unjustly enriched at the expense of Plan participants. Rather than use those funds to offset costs for other (non-nicotine-using) participants, Bally's used those funds to offset its own contributions to the Plan. This is demonstrative of Bally's failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A

68.     Bally's caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). Bally's is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

69.     By retaining the amounts of the tobacco surcharges, Bally's increased its own monies, earned interest on that money, and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with an avenue to earn the "full reward" to which they are entitled, Bally's improperly benefitted from its own wellness programs at the expense of Plan participants.

70.     Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. §

1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with their fiduciary duties under ERISA, they would have offered a compliant reasonable alternative standard to all participants that used tobacco that enabled them to obtain the "full reward" regardless of when they satisfied that standard during the Plan year, would have provided participants with the necessary disclosures, would have reviewed the terms of the Plan and the wellness programs regularly to ensure they complied with ERISA, and would have ensured that any funds collected from the surcharge program went directly to the Plan and its participants

71.     ERISA also imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. In allowing the Committee to impose an unlawful tobacco surcharge in connection with a non-compliant wellness program in violation of ERISA, Bally's breached its fiduciary duties to supervise and monitor the Committee. Bally's also failed to monitor the frequency with which the Committee reviewed the terms of the wellness program to ensure compliance with ERISA.

72.     As a direct and proximate result of these fiduciary breaches, Plaintiff and members of the Class collectively lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

73.     Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to:

make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged here.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment stating that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharges;

D. A declaratory judgment stating that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to adequately monitor the terms of the Plan and wellness program, as well as communications with participants, to ensure it complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed

on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G.  Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H.  Restitution of all surcharge amounts Defendant collected;

I.  Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J.  Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L.  An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: May 27, 2025

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

By: */s/ Oren Faircloth*

Oren Faircloth (*pro hac vice*)
Kimberly Dodson (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: kdodson@sirillp.com

Mark B. Morse
RI Bar Reg No 3003
420 Angell Street
Providence, RI 02906
(401) 831-0555
Fax (401) 273-0937
mark@morselawoffice.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, I electronically filed the foregoing document using

the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Oren Faircloth*
Oren Faircloth