UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TRACY A. WILLIAMS, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 1:25-00147-MSM-PAS |
| : | |
| BALLY'S MANAGEMENT GROUP, LLC, : | |
| : | |
| Defendant. : | |
| : | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff's opposition to Defendant Bally's Management Group, LLC's (Bally's Management's) motion to dismiss fails to rebut Defendant's arguments showing that dismissal of the amended complaint is required based on lack of standing (Count II) and for failure to state a claim (Counts I and II). Plaintiff's opposition fails to establish losses to the Plan resulting from Bally's Management's collecting the tobacco surcharge, as required for statutory and constitutional standing under 29 U.S.C. § 1109 relating to Plaintiff's fiduciary breach and prohibited transaction claims. Plaintiff's strategy is to set up straw man arguments to knock down points that Defendant did not argue in the motion to dismiss. Nor does Plaintiff rely on statutory or regulatory requirements for her disclosure and "full reward" claims, but rather bases her case on preamble statements that are not legally binding.

> **A. Plaintiff Lacks Standing to Bring Claims Under 29 U.S.C. § 1109 (Count II) by Failing to Establish Harm to the Plan and Redressable Relief for the Plan**

Plaintiff contends that she is entitled to bring claims in a representative capacity on behalf of the Plan, but she fails to rectify the fundamental flaw in her case that precludes those claims

under 29 U.S.C. § 1109(a) and § 1132(a)(2).[1] Neither the amended complaint nor Plaintiff's response brief establishes harm to the Plan because of the tobacco surcharge that she individually paid. Rather, the allegations in the amended complaint make clear that the only alleged harm at issue is *her* individual payment of a supposedly improper tobacco surcharge. Plaintiff does not allege the Plan was underfunded or was unable to pay benefits. As such, the amended complaint contains no plausible allegation that the Plan suffered losses through Bally's Management's collecting from her a tobacco surcharge used to pay Plan benefits. Plaintiff's failure to establish harm to the Plan therefore requires dismissal of her claims under 29 U.S.C. § 1109. *See N.R. v. Raytheon Co.*, 24 F.4th 740, 751 (1st Cir. 2022).

      Instead of addressing the required issue of harm to the Plan, Plaintiff simply repeats in her opposition the allegation, without providing any details, that Bally's Management deposited the tobacco surcharges into its corporate accounts without passing the value back to the Plan or its participants. *See* ECF No. 13 at 18. However, those allegations are contradicted by the HeathScope Plan Document that identifies employer and employee contributions as the source for paying benefits under the Plan. *See* ECF No. 11-3 at 5, 6. More importantly, the Plan is a defined-benefit plan in which the participants receive vested benefits, defined under the HealthScope Plan Document, through Bally's Management's funding the Plan's liabilities. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 440 (1999); *Winsor v. Sequoia Benefits*, 62 F.4th 517, 528 (9th Cir. 2023); *Smith v. Medical Benefit Administrators Group*, 639 F.3d 277, 283 (7th Cir. 2011). Bally's Management is financially responsible for paying the Plan's liabilities as a self-funded, defined benefit arrangement. Because Plaintiff fails to allege that Bally's

---

[1] Section 1132(a)(2) provides for a cause of action under Section 1109, which requires losses to the plan.

Management did not fund the Plan or pay vested benefits under the Plan, she has not established the harm required to bring a claim in a representative capacity under 29 U.S.C. § 1109. *See Raytheon*, 24 F.4th at 751.

Plaintiff's arguments about individual harm resemble those that courts have rejected as insufficient for bringing claims under Section 1109. For example, in *Raytheon*, the plaintiff alleged she was entitled to payments based on the plan administrator's failure to comply with the Parity Act. *See* 24 F.4th at 747-48 & 749-50. Although those allegations showed the fiduciary improperly denied payments to the participant, the First Circuit held the allegations insufficient to establish a claim under Section 1109 because the participant alleged neither damages to the financial integrity of the plan nor that any recoveries would inure to the plan. *Id*. at 750. Similarly, in *Smith v. Medical Benefit Administrators*, the plaintiff alleged she suffered an injury from the claims administrator's failure to pay medical claims under a pre-authorization approval. *See* 639 F.3d at 281. The Seventh Circuit noted that those alleged actions stated a fiduciary breach, but the plaintiff could not obtain relief for the self-funded benefit plan under Section 1109 because the injury at issue was individual to the participant, not the plan. *Id*. at 283.

The same result follows in this case where the Plaintiff's individual payment of a surcharge is the only alleged harm, which is an injury she suffered, not the Plan. She does not allege how those surcharges harmed the financial integrity of the Plan or jeopardized its ability to pay benefits. Rather, she argues that Bally's Management used the surcharges to reduce its contributions to the Plan. *See* ECF No. 13 at 18. In other words, the Plan was adequately funded, but Plaintiff wants Bally's Management to repay her the surcharge out of its corporate assets. Those allegations and the requested relief have nothing to do with any injury to the Plan

as they relate only to money damages Plaintiff seeks to recover from Bally's Management for her own benefit. Thus, Plaintiff cannot bring a claim under 29 U.S.C. § 1109.[2]

For the same reason, Plaintiff's alleged individual harm in paying a tobacco surcharge defeats constitutional standing for any claims under 29 U.S.C. § 1109(a) and § 1132(a)(2). Again, Plaintiff does not tie her alleged individual financial loss to any problems with the Plan's paying benefits. Even if Bally's Management retained the tobacco surcharge, as Plaintiff alleges in a conclusory manner, Bally's Management is still required to pay for vested benefits under the HealthScope Plan as a defined benefit plan. *See* ECF No. 11-3 at 5, 6. Under the Supreme Court's decision in *Thole* v. *U.S. Bank*, the Plan's defined benefit structure precludes Plaintiff from establishing standing because her alleged injury in paying a supposed unlawful surcharge does not affect any vested benefits that Bally's Management is required to pay under the terms of the Plan. *See* 590 U.S. 538, 543 (2020). Thus, Plaintiff cannot use her individual harm or Bally's Management's use of the tobacco surcharge as a basis for establishing constitutional standing in the context of a defined benefit plan. *See Winsor*, 62 F.4th at 528.

Plaintiff's opposition fails to engage with those points in any meaningful way. Rather, she sets up a straw man argument by asserting that Bally's Management is attempting to avoid fiduciary liability based on the Plan's status as a self-funded arrangement. *See* ECF No. 13 at 17. Of course, the Plan's structure does not negate fiduciary duties, but the structure does determine

---

[2] Plaintiff contends that she may bring a claim in a representative capacity under Section 1109 by alleging losses to her individual plan account. *See* ECF No. 13 at 14 n.8. This argument is intentionally misleading. As pointed out in Defendant's motion to dismiss, a self-funded welfare plan like the HealthScope Plan is not composed of individual participant accounts. *See* ECF No. 11 at 19 n.14. It is a defined benefit plan, not a defined contribution plan. *See* ECF No. 11-3 at 5, 6. For that reason, *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 128 (2008), which involved a defined contribution plan, provides no help to Plaintiff in attempting to tie her individual harm to the operation of a defined benefit plan that does not hold individual participant accounts. *See Medical Benefit Administrators*, 639 F.3d at 283.

what type of harm is necessary to establish standing. *See Thole,* 590 U.S. at 543; *Winsor*, 62 F.4th at 527-28. On that basis, Plaintiff fails to establish the type of harm required in the context of a defined benefit plan like the HealthScope Plan at issue in this case.

Plaintiff further attempts to evade her burden of establishing harm to the Plan by arguing that she may seek a disgorgement of profits, which she contends does not require a showing of harm. *See* ECF No. 13 at 18-19. This argument faces two fundamental problems. First, the Supreme Court has expressly held that there is no ERISA exception to Article III. *See Thole*, 590 U.S. at 547. Relatedly, the Ninth Circuit recently rejected the contention that a disgorgement remedy does not require a showing of harm. *See Winsor*, 62 F.4th at 527-28. Based on the *Thole* decision, the Ninth Circuit held that the plaintiffs' individual pocketbook injury is not sufficient to establish a basis for a disgorgement remedy in the context of defined benefit plan from which the participants received all the benefits due. *Id*. at 528. Plaintiff fails to address *Thole* and instead cites cases decided before the Supreme Court's decision. *See* ECF No. 13 at 19.[3]

Plaintiff's disgorgement theory fails to establish standing for another reason. Under Section 1109, a breaching fiduciary must "restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). The statute plainly requires disgorging profits to the plan. However, Plaintiff wants Bally's

---

[3] Plaintiff states in a cursory manner that Bally's Management's supposed retaining of the surcharge "undermined" the "financial health" of the Plan. ECF No. 13 at 18. Plaintiff provides no details to support this threadbare assertion, which is not sufficient to establish the requisite harm. *See Thole*, 590 U.S. at 546 ("a bare allegation of plan underfunding does not itself demonstrate a substantially increased risk that the plan and the employer would both fail"). Plaintiff does not allege, nor could she legitimately allege, that Bally's Management did not pay the Plan's obligations as specified under the HealthScope Plan Document. ECF No. 11-3 at 5, 6.

5

Management to return the surcharges to her individually. *See* Am. Compl. Prayer for Relief C & I. Plaintiff's disgorgement remedy therefore does not provide the Plan with relief.

Relatedly, Plaintiff alleges in a conclusory manner that Bally's Management improperly retained her tobacco surcharge and failed to remit it to the Plan. *See* ECF No. 13 at 17-18. If that conclusory allegation is enough to state a claim (which it is not), under Plaintiff's disgorgement theory, the alleged improperly collected tobacco surcharges would be returned to the Plaintiff, not the Plan. *See Liu v. SEC*, 591 U.S. 71, 88-89 (2022) (the equitable nature of disgorgement requires the return of unjust profits to the person harmed). This is further confirmed by Plaintiff's contention that Bally's Management should not have collected the surcharge from her in the first place. As such, Plaintiff is seeking recoveries for herself, not the Plan, which strips her "statutory standing" under 29 U.S.C. § 1109.[4]

For the same reason, Plaintiff fails to establish that her claims provide redressable relief to the Plan. Plaintiff contends that Bally's Management cannot defeat redressability by pointing to its ability under the Plan document to adjust contribution levels in response to an order from the Court to return the tobacco surcharge. *See* ECF No. 13 at 21-22. Plaintiff's suggestion runs contrary to the *Winsor* decision where the Ninth Circuit recently reaffirmed, in the defined benefit plan context, that "[t]here is no redressability, and thus no standing, where (as is the case

---

[4] The distinction between constitutional and statutory standing requires clarification. "Statutory standing" under ERISA is simply a question of whether the plaintiff has a cause of action under the statute. *See Karkare v. International Association of Bridge Eyeglasses*, 140 F.4th 60, 63 (2d Cir. 2025). Constitutional standing implicates the jurisdiction of the Court to hear a case or controversy. *See Thole*, 590 U.S. at 540. In either case, in the context of Section 1109, the plaintiff is required to establish harm to the plan for statutory standing, *see Raytheon*, 24 F.4th at 751, and constitutional standing. *See Thole*, 590 U.S. at 546. Although constitutional standing is a matter of jurisdiction, if statutory standing is not "jurisdictional," the Court should still dismiss Plaintiff's Section 1109 causes of action for failure to state a claim under Rule 12(b)(6). *See Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006).

here) any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict." 62 F.4th at 526 (citation omitted). The court noted that the plaintiff's claims were not redressable where the plan administrator was free to offset its own contributions based on any recoveries to the plan. *Id*. at 527. The same is true in this case. If the Plan recovered the allegedly improperly paid surcharges, it would allow Bally's Management to reduce its contributions to the Plan, defeating redressability.[5]

Plaintiff faces a more fundamental problem. Plaintiff's tactic is to conflate her recoveries with the Plan's recoveries. As discussed above, Plaintiff contends that Bally's Management improperly collected surcharges from her and allegedly retained those surcharges without remitting them to the Plan. *See* ECF No. 13 at 17-18. Under that theory, Bally's Management would be required to return the tobacco surcharges to her, not the Plan. In other words, the Plan will not obtain any recoveries under Plaintiff's claims, undercutting any redressable relief for the Plan. Thus, Plaintiff fails to establish standing in a representative capacity to bring fiduciary breach and prohibited transaction claims under 29 U.S.C. § 1109.

### B.  Plaintiff Fails to State a Disclosure Claim (Count I)

Plaintiff's claim that Bally's Management did not properly provide notice of the available alternative standard for avoiding the tobacco surcharge fails based on the disclosures in the

---

[5] Plaintiff contends this result somehow shows Bally's Management's improper use of the tobacco surcharge as a device to fund the Plan. *See* ECF No. 13 at 22 n.11. However, nothing prevents Bally's Management from using surcharges tied to a wellness program to fund plan benefits, including adjusting cost-sharing or contributions. *See* 45 C.F.R. § 146.121(f). Moreover, if Bally's Management, acting as plan sponsor, elects to adjust contributions or cost sharing, such an action is a settlor function that does not implicate fiduciary responsibility or liability. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444-45 (1999); *Sec'y of Labor v. Macy's, Inc.*, 2021 WL 5359769, at *18 (S.D. Ohio Nov. 17, 2021).

General Plan Document (ECF No. 11-1 at 20, 21). Plaintiff's opposition relies on the false statement that the Plan document disclosures do not mention the tobacco surcharge. *See* ECF No. 13 at 23. Contrary to Plaintiff's contention, the 2022 Plan document states on page 12 that "Your cost for medical coverage may be affected by your use of tobacco products, your participation in certain wellness program activities (See "WELLNESS PROGRAM" for additional information), and, if you are married and cover your spouse, your spouse's eligibility for employer sponsored group medical coverage." ECF No. 11-1 at 20. As such, tobacco users are directed to the information under the "Wellness Program" on the next page of the Plan document. Under the "Wellness Program" heading, the Plan document provides the following additional information:

> The wellness program is part of the Employer's commitment to helping you achieve your best health. Rewards for participating in a wellness program are available to all Employees. If you believe that you may be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact the Contact Person and we will work with you (and if you wish with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

ECF No. 11-1 at 21. A similar notice appears in the subsequent General Plan Document with the additional information about the availability of the HealthScope (UMR) Care program to help with tobacco cessation. *See* ECF No. 11-2 at 21.

Despite the General Plan Documents' disclosures about the wellness program and the available alternative standard for tobacco users, Plaintiff contends the information is not good enough. *See* ECF No. 13 at 23. The contention fails. The General Plan Documents use nearly identical language from the sample disclosure language in the Department of Labor's regulation.

*See* 29 C.F.R. § 2590.702(f)(6).[6] Bally's Management's use of the sample notice language from the regulation defeats her disclosure claims.[7]

Plaintiff also contends the 2022 General Plan Document does not mention that the Plan will retroactively return the tobacco surcharge when the participant completes the wellness program or the alternative standard. *See* ECF No. 13 at 23, 25. Setting aside the other defects in Plaintiff's arguments about the supposed requirements of a "full reward," the Department of Labor's sample disclosure language does not mention a retroactive reimbursement. *See* 29 C.F.R. § 2590.702(f)(6). Thus, Plaintiff fabricates a notice requirement that does not appear in the PHSA or the regulations.

Although the General Plan Documents use nearly identical notices appearing in the Department of Labor's sample disclosure language, Plaintiff still contends Bally's Management did an inadequate job because the benefits guides do not contain all the supposed necessary disclosures about the alternative standard. *See* ECF No. 13 at 23-24.[8] However, because the

---

[6] Plaintiff complains that Defendant only cites the Department of Labor's regulations, not the regulations published contemporaneously by Health and Human Services. *See* ECF No. 13 at 9 n.3. Plaintiff draws from this accusation the odd conclusion that Defendant is obscuring the significance of the PHSA. *Id*. The contention is a red herring because the Health and Human Services' regulations mimic the Department of Labor's regulations, both of which were published at the same time. *See* 78 Fed. Reg. 33158, 33181, 33187 (June 3, 2013). Relatedly, the Health and Human Services' regulations provide the same sample disclosure language appearing in the Department of Labor's regulation. *Id*. at 33192.

[7] Plaintiff refers to the information in the General Plan Document as "boilerplate." ECF No. 13 at 23. This criticism is misplaced because the so-called "boilerplate" language repeats in substance the information the Department of Labor provides in its sample disclosure language. *See* 29 C.F.R. § 2590.702(f)(6).

[8] Plaintiff incorrectly states that Bally's Management did not attach the 2023 and 2024 benefits guides to its second motion to dismiss. *See* ECF No. 13 at 12 n.6. In fact, Bally's Management attached those two benefits guides as Exhibits 6 and 7 to its second motion to dismiss. *See* ECF No. 11-6, ECF No. 11-7.

9

benefits guides do not describe the terms of the wellness program, neither the statute nor the regulation require that those materials discuss the details of the alternative standard. *See* 42 U.S.C. § 300gg-4(j)(3)(E) ("If plan materials disclose that such a program is available, without describing its terms, the disclosure under this subparagraph shall not be required."); *see also* 29 C.F.R. § 2590.702(f)(4)(v).

In response, Plaintiff incorrectly states that the regulation requires the disclosures to appear in all plan materials. *See* ECF No. 13 at 12, 24. However, that requirement is not stated in the regulation. Rather, the purported requirement Plaintiff identifies appears in a preamble discussion, *see* 78 Fed. Reg. at 33166, which does not have the force of law. *See National Wildlife Federation v. EPA*, 286 F.3d 554, 569-70 (D.C. Cir. 2002); *see also Scan Health Plan v. HHS*, 2024 WL 2815789, *6 (D.D.C. June 3, 2024) ("when there is a discrepancy between the preamble and the Code, it is the codified provisions that control.") (cleaned up). Moreover, if Plaintiff is correct that the preamble requires disclosures in all plan materials regardless of whether those materials describe the terms of the wellness program, the preamble statement is contrary to law. *See* 42 U.S.C. § 300gg-4(j)(3)(E); *see also Ball, Ball & Brosamer v. Reich,* 24 F.3d 1447, 1450 (D.C. Cir. 1994) ("An agency can neither adopt regulations contrary to statute, nor exercise powers not delegated to it by Congress."). Thus, Plaintiff fails to state a claim regarding the sufficiency of the disclosures in the General Plan Documents, the HealthScope Plan Document, and the benefits guides.

### C. Plaintiff's Retroactive "Full Reward" Claim Fails (Count I)

Plaintiff attempts to buttress her retroactive full reward claim by reiterating the legally flawed contention that the Plan documents and benefits guides are defective because they do not discuss a retroactive full reward. *See* ECF No. 13 at 25-26. Again, there is no legal requirement

10

that the Plan document or other plan materials discuss a retroactive reimbursement of a reward. *See* 29 C.F.R. § 2590.702(f)(6). Although not required to do so, Bally's Management elected to make additional disclosures in the 2025 General Plan Document to clarify that for the participants completing the tobacco cessation program, or other alternative program, the monthly tobacco surcharge will be stopped and prior surcharge amounts paid during the current plan year will be refunded to the participant. *See* ECF No. 11-2 at 21. This clarification goes beyond what is required by the Department of Labor's regulation, and nothing in the previous General Plan Document or benefits guides justifies the inference that a retroactive payment is not available upon completion of the program or standard. *See, e.g.*, ECF No. 11-7 at 10.

Setting aside Plaintiff's flawed disclosure claim, she fails to substantiate with non-conclusory allegations that Bally's Management does not repay retroactively the surcharges to participants. Plaintiff's opposition provides no details about how she or any other participant were denied a retroactive repayment of the surcharge after completing the wellness program or an alternative standard. *See* ECF No. 13 at 26. Plaintiff simply states without detail that Bally's Management failed to pay the full reward. Those threadbare allegations that repeat the elements of a cause of action are not sufficient to state a claim. *See Kendell Seafood Imports, Inc. v. Mark Foods, LLC*, 2025 WL 1124622, at *2 (D.R.I. April 16, 2025).

Plaintiff attempts to sidestep the defects in her case by claiming that every court addressing the tobacco surcharge issue has found that a plaintiff's alleging a plan's failure to pay the "full reward" is sufficient to state a claim. *See* ECF No. 13 at 6, 32. However, Plaintiff fails to mention the recent decision in *Buescher v. North American Lighting*, 2:24-cv-02076, ECF No.

11

31 at 57-58 (C.D. Ill. June 30, 2025), where the court rejected an argument similar to Plaintiff's claim about the scope of a "full reward."[9]

In the *Buescher* case, the plan provided a prospective reward for the next plan year when a participant completes the tobacco cessation program. *Id*. at 60. The *Buescher* Court held that this one-year offset, which operates for the next plan year, provides a full reward within the meaning of the PHSA and the implementing regulations. *Id*. The district court reasoned that such a program operates retroactively by asking whether the participant stopped smoking or completed the cessation program, and if so, the surcharge is eliminated for the next plan year. *Id*. The district court concluded that the Plan complied with the "full reward" requirement. *Id*. The *Buescher* Court's reasoning defeats Plaintiff's wide-reaching arguments about retroactivity that are disconnected from the statute.

Even if Bally's Management did not provide a retroactive repayment of the surcharge upon the participant's completion of the program or standard, a prospective elimination of the tobacco surcharge is permissible under the *Buescher* Court's reasoning. As the court noted, the plaintiff's primary argumentative strategy of repeating over and over again and italicizing and bolding the phrase "full reward" (which is Plaintiff's tactic in this case) cannot create a requirement that does not appear in the statute or regulation. *Id.* at 57-58. Thus, even if Plaintiff is correct (which she is not) that the benefits guides only reference a prospective elimination of the surcharge for the next plan year, under the *Buescher* Court's reasoning, such reward constitutes a "full reward." Plaintiff therefore fails to state a claim in reliance on the surcharge elimination language in the Plan documents and benefits guides.

---

[9] Defendant attaches the *Buescher* decision to this reply as Defendant's Exhibit "8." Defendant's numbering convention for its exhibits continues in order from it prior Exhibits 1 through 7 attached to its motion to dismiss.

12

The *Buescher* Court's analysis of the full reward requirement is instructive for another reason. Plaintiff relies heavily on the *Bokma*, *Mehlberg*, and *Lipari-Williams* decisions for the proposition that retroactive refunds are required. *See* ECF No. 13 at 6, 32. Defendant already noted why the *Bokma* decision is irrelevant on this issue because it did not address Defendant's argument that deference to the agency's interpretation of its regulation does not apply when the agency parrots statutory language. *See* ECF No. 11 at 26 n.16.[10] Setting aside the limited value of the *Bokma* decision in ignoring the significance of the anti-parroting canon, *see Sun Capital Partners v. New England Teamsters*, 724 F.3d 129, 141 (1st Cir. 2013), the *Buescher* Court identified further significant defects with the *Bokma*, *Mehlberg*, and *Lipari-Williams* decisions. The *Buescher* Court reviewed those decisions and determined that they accepted the retroactive reward requirement based solely on the agencies' preamble statement to the regulations. *See Buescher*, ECF No. 31 at 53-56; *see also* 78 Fed. Reg. at 33163. As such, the fundamental flaw in those previous courts' decisions, as with Plaintiff's legal theory in this case (Am. Compl. ¶ 28; ECF No. 13 at 30-31), is their reliance on a preamble statement, which does not have the force of law. *See National Wildlife Federation*, 286 F.3d at 569-70; *Scan Health Plan*, 2024 WL 2815789, *6.

Aside from repeating the phrase "full reward" with italics and underscoring, Plaintiff cannot point to any language in the statue or regulation that requires a retroactive repayment of a tobacco surcharge. *See* 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv). Nor can Plaintiff rely on deference to the agencies' interpretation of a parroting regulation, so she is left with the agencies' statutory interpretation for which they receive no deference. *See Loper Bright*

---

[10] Plaintiff fails to respond to this point other than to say that Bally's Management does not understand how administrative law works. ECF No. 13 at 31. This is an odd statement when Plaintiff ignores a basic principle of administrative law, as stated in *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006), that the courts do not defer to an agency's interpretation of a regulation that parrots the statute.

13

*v. Raimondo,* 603 U.S. 369, 412-13 (2024); *Rhode Island Latino Arts v. National Endowment for the Arts*, --- F. Supp. 3d ---, 2025 WL 1009026, at *9 (D.R.I. April 3, 2025).

Plaintiff again evades those points by setting up another straw man argument in her opposition. Plaintiff contends that *Loper Bright* does not authorize the Court to ignore properly promulgated regulations. *See* ECF No. 13 at 33. That's true. But the point is irrelevant. Bally's Management does not argue that the Court should set aside a regulation because Plaintiff does not bring a claim based on a regulation. The regulation nowhere establishes a retroactive payment requirement. *See* 29 C.F.R. § 2590.702(f)(1)(i), (4)(iv). Rather, Plaintiff relies on a preamble statement to advance the theory that the "full reward" includes in all cases a retroactive repayments of tobacco surcharges. *See* Am. Compl. ¶ 28 (quoting 78 Fed. Reg. 33163).[11] But a preamble statement is not the regulation. *See National Wildlife Federation*, 286 F.3d at 569; *Scan Health Plan*, 2024 WL 2815789, *6. Thus, Plaintiff's reliance on the *Bokma* decision as a "roadmap" (*see* ECF No. 13 at 32 n.20) does not work because the *Bokma* roadmap also relies on the preamble statement to construct a spurious requirement. *See* Def.'s Exhibit 8 at 55-56; *see also Bokma v. Performance Food Group*, 2025 WL 1452042, at *15 (E.D. Va. May 20, 2025) (relying the *Mehlberg* Court's use of the preamble statement).

Without a retroactive payment requirement stated in the text of the regulation, Plaintiff's reliance on the preamble necessarily implicates the agencies' statutory interpretation. But the Court does not defer to the agencies' interpretation of the statute, *see Loper Bright*, 603 U.S. at 412-13, and Plaintiff has not made a convincing rebuttal to the textual and structural arguments

---

[11] Plaintiff makes misleading statements by asserting that the preamble statement is the "final regulation." *See* Am. Compl. ¶ 28; ECF No. 13 at 31 n.19.

14

in Bally's Management's motion showing that the statute does not include a retroactive payment requirement. *See* ECF No. 11 at 26-28. Thus, Plaintiff's claim fails as a matter of law.

### D. Plaintiff Fails to State a Fiduciary Breach Claim (Count II)

Plaintiff's opposition is also deficient in addressing Bally's Management's motion to dismiss her fiduciary breach claims. Plaintiff brings a fiduciary duty of loyalty claim, *see* Am. Compl. ¶ 67, but the crux of her amended complaint is to attack the Plan settlor's decision to set a tobacco surcharge as part of the Plan's structure. Plaintiff cannot state a fiduciary breach claim based on those allegations because they are plan design matters that do not implicate any fiduciary duties. *See Macy's Inc.,* 2021 WL 5359769, at *18.

Plaintiff's opposition tries to evade the point by attempting to distinguish *Spink* and *Hughes Aircraft* in contending that those cases only deal with amending a plan. *See* ECF No. 13 at 36. But she fails to explain how making a tobacco surcharge part of the plan design is not a settlor function similar to amending a plan. *See Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995) (board's decision to establish and initially fund a plan with newly issued stock did not constitute fiduciary conduct); *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 757 (7th Cir. 1999) (employer's decision regarding how to structure a plan was not a fiduciary decision). Plaintiff also suggests that Bally's Management faces fiduciary liability for implementing a plan design, but she fails to deal with the *Macy's* Court's rejection of that argument. *See Macy's Inc.,* 2021 WL 5359769, at *18 ("But the distinction between creation (a settlor function) and implementation (a fiduciary function) is illusory where the Secretary alleges only that a discriminatory wellness program was implemented as created.").

### E. Plaintiff Fails to State a Prohibited Transaction Claim (Count II)

The basic problem with Plaintiff's prohibited transaction claim is the fact that the tobacco surcharge is used to pay Plan benefits. Employees are responsible for paying contributions to help fund the Plan, *see* ECF No. 11-3 at 5, 6, and Bally's Management's use of the tobacco

15

surcharge to help pay for Plan benefits is permissible. *See* 45 C.F.R. § 146.121(f). This defeats Plaintiff's claims because paying benefits under the Plan is not a prohibited transaction. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 892-93 (1996).

Plaintiff's opposition repeats the conclusory statement that Bally's Management used the surcharge to decrease its own contributions. *See* ECF No. 13 at 37. That threadbare allegation is insufficient. *See Mark Foods, LLC*, 2025 WL 1124622, at *2. Yet, even if the cursory statement about Bally's Management using the surcharge to offset costs were sufficient, it does not establish a prohibited transaction. Plaintiff's allegation is simply a derogatory way of saying that Bally's Management used employee contributions to offset Plan costs, which is permissible under ERISA. *See Medical Benefit Administrators*, 639 F.3d at 283 ("The plan at issue here, however, is a group health insurance plan, which is the kind of defined benefit plan . . . and which typically holds no assets in trust for any individual participant."). Thus, Bally's Management did not engage in a prohibited transaction by using Plaintiff's contributions and tobacco surcharges along with its own assets to cover the liabilities of the Plan.

**F.  Plaintiff Should Be Required to Exhaust Administrative Remedies**

Plaintiff argues vigorously to avoid exhausting administrative remedies before challenging in court her contribution requirement to the Plan through the tobacco surcharge. The parties agree that the First Circuit has not yet addressed the issue of whether administrative exhaustion is mandatory for statutory claims, but Plaintiff does not provide any viable reason for foregoing administrative exhaustion in her case.

If Plaintiff would have pursued administrative remedies, she would have discovered, as stated in the General Plan Document and benefits guides, that the Plan has an alternative standard for avoiding the tobacco surcharge. Plaintiff's pursing the administrative process would

have obviated her original complaint, which alleged falsely that the Plan did not have an alternative standard. Moreover, if Plaintiff would have participated in the wellness program or the alternative standard, she may have likely received a retroactive repayment of the surcharge, as stated in the current General Plan Document. If she pursued those administrative processes, the result may have likely mooted the issues in this case. Instead, Plaintiff jumped ahead to challenge the tobacco surcharge in court.

Plaintiff's conduct in filing a lawsuit and asking questions later illustrates one of the purposes behind the administrative exhaustion requirement: to minimizes frivolous lawsuits. *See Kinkead v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan,* 111 F.3d 67, 68 (8th Cir. 1997). Plaintiff should not be rewarded for an inadequate investigation of the issues and a failure to pursue a benefits request before filing a lawsuit.

\* \* \* \* \*

Based on the foregoing, and for the reasons stated in Defendant's motion to dismiss, the Court should dismiss Count II of Plaintiff's first amended complaint for lack of constitutional and statutory standing, or alternatively, for failure to statute a claim. The Court should also dismiss Count I of Plaintiff's first amended complaint for failure to state a claim.

Dated: July 7, 2025

Respectfully submitted,

s/Geoffrey Forney
GEOFFREY FORNEY
ME 006734; PA 202870; NJ 036232006
Fisher & Phillips LLP
One Monument Square, Ste. 201
Portland, ME 04101
202-615-8315/ gforney@fisherphillips.com

Attorney for Bally's Management Group