# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| TRACY A. WILLIAMS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | C.A. No. 1:25-00147-MSM-PAS |
| BALLY'S MANAGEMENT GROUP, | ) | |
| LLC, | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion to Dismiss of the defendant, Bally's Management Group, LLC ("Bally's Management" or "Bally's"). (ECF No. 11.) The plaintiff, Tracy Williams, is a participant in an employee welfare benefit plan managed by Bally's Management. (ECF No. 10 ¶¶ 10–13.) Ms. Williams sued Bally's Management, alleging that it violated the non-discrimination provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1182, by imposing an unlawful tobacco surcharge on participants in its employee benefits plan. (ECF No. 10 ¶¶ 54–60) ("Count I"). Ms. Williams also claims that Bally's Management breached its fiduciary duty to plan participants in violation of 29 U.S.C. §§ 1104, 1106. (ECF No. 10 ¶¶ 61–73) ("Count II").

Bally's moved to dismiss both Counts I and II under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Count II under Federal Rule of Civil Procedure (12)(b)(1) for lack of subject-matter jurisdiction, alleging that Ms.

Williams lacks statutory and constitutional standing to bring that claim. (ECF No. 11.) For the following reasons, the Court grants Bally's Management's Motion to Dismiss Count I of the Amended Complaint for failure to state a claim and Count II for lack of subject-matter jurisdiction.

## I.    BACKGROUND

### A.    Statutory and Regulatory Background

#### 1.    ERISA and Outcome-based Wellness Programs

ERISA governs the management and administration of employee welfare benefit plans established or maintained by employers that provide employee participants with medical, surgical, or hospital benefits. *See* 29 U.S.C. §§ 1002(1), 1101(a). Under ERISA, an employer administering a group health plan "may not require any individual . . . to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual." 29 U.S.C. § 1182(b)(1). However, that provision does not prevent an employer from "establishing premium discounts or rebates . . . in return for [an employee's] adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B); *see also* 42 U.S.C. § 300gg-4(b)(2)(B); *Bokma v. Performance Food Group, Inc.*, 783 F. Supp. 3d 882, 887–88 (E.D. Va. 2025) (reviewing relevant statutory and regulatory background).

These programs are referred to as "wellness programs" under 42 U.S.C. § 300gg-4(j). A reward for compliance with a qualifying wellness program may include

"the absence of a surcharge" for the complying employee.  42 U.S.C. § 300g-4(j)(3)(A). To qualify, a wellness program must meet certain statutory requirements, including that it "be reasonably designed to promote health or prevent disease," make available the "full reward" to "all similarly situated individuals," and must "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard."  42 U.S.C. § 300gg-4(j)(3)(B)–(E).

The Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") promulgated regulations for qualifying outcome-based wellness programs like tobacco cessation programs.  *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33181–86 (June 3, 2013) (codified at 29 C.F.R. § 2590.702).  Under these regulations, which expand upon the statutory requirements, an outcome-based wellness program must satisfy five conditions.  *See* 29 C.F.R. § 2590.702(f)(4)(i)–(v).  First, "[t]he program must give individuals eligible for the program the opportunity to qualify for the reward under the program at least once per year."  *Id.* § 2590.704(f)(4)(i).  Second, the size of the reward must not exceed a certain applicable percentage of the total cost of coverage.  *Id.* § 2590.704(f)(4)(ii). Third "[t]he program must be reasonably designed to promote health or prevent disease," requiring that it have a "reasonable chance of improving the health of, or preventing disease in, participating individuals," not be "overly burdensome" and not act as "subterfuge for discriminating based on a health factor."  *Id.* § 2590.704(f)(4)(iii).

The fourth and fifth conditions are most at issue here. The fourth condition requires that the "full reward" be available to all similarly situated individuals, and that any individual who does not meet the initial standard for the reward must be given a "reasonable alternative standard" for obtaining the reward. *Id.* § 2590.704(f)(4)(iv). Whether a reasonable alternative standard has been furnished requires consideration of "[a]ll the facts and circumstances," including whether the plan accommodates the recommendations of an individual's personal physician in cases where the physician "states that a plan standard . . . is not medically appropriate for that individual." *Id.* § 2590.704(f)(4)(iv)(C).

The fifth condition requires adequate notice of the availability of the reasonable alternative standard:

> The plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required.

*Id.* § 2590.704(f)(4)(v). The Departments' regulations provide the following sample language for satisfying the notice requirement:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish,

with your doctor) to find a wellness program with the same reward that
is right for you in light of your health status.

*Id.* § 2590.704(f)(6). The regulations state that this language, "or substantially

similar language, can be used to satisfy the notice requirements" described above. *Id.*

### 2. ERISA Fiduciary Duties

ERISA requires that fiduciaries administer plans for the exclusive purpose of

providing benefits to participants and defraying reasonable expenses in

administering the plan. See 29 U.S.C. § 1104(a)(1)(A)(i)-(ii); *see Ellis v. Fid. Mgt. Tr.*

*Co.*, 883 F.3d 1, 5 (1st Cir. 2018). The threshold question in cases alleging a breach

of ERISA fiduciary duty is "whether that person was acting as a fiduciary (that is,

was performing a fiduciary function) when taking the action subject to complaint."

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). A person operates as an ERISA

fiduciary to the extent that person "exercises any discretionary authority or

discretionary control respecting management of such plan or exercises any authority

or control respecting management or disposition of its assets" and to the extent that

person "has any discretionary authority or discretionary responsibility in the

administration of such plan." 29 U.S.C. § 1002(21)(A).

ERISA supplements the general fiduciary duty of loyalty to the plan's

beneficiaries by prohibiting fiduciaries from engaging in specified transactions that

tend to threaten the financial integrity of plans. *See* 29 U.S.C. § 1106(a)-(b); *Harris*

*Trust v. Salomon Smith Barney*, 530 U.S. 238, 241-42 (2000). Specifically, 29 U.S.C.

§ 1106(a)(1) prohibits certain kinds of transactions between the plan and a party in

interest, while §1106(b)(1) prohibits fiduciaries from "deal[ing] with the assets of the

plan in [the fiduciary's] own interest." Pursuant to 29 U.S.C. § 1132(a)(2), a participant in an ERISA plan is authorized to bring a civil action alleging liability for breach of a fiduciary duty under 29 U.S.C. § 1109.

## B.    Factual and Procedural Background

The general facts of this case are not in dispute. Ms. Williams has been an employee of Bally's Chicago Operating Company, LLC ("Bally's Chicago"), a subsidiary of Bally's Corporation, since August 2023. (ECF No. 10 ¶ 10; ECF No. 11 at 10.) Bally's Management is another subsidiary of Bally's Corporation. (ECF No. 11 at 9.) Bally's Management sponsors and maintains an employee welfare benefit plan ("the Plan") that provides benefits to employees of Bally's Corporation's subsidiaries, including Bally's Chicago. (ECF No. 1 ¶ 12–13; ECF No. 11 at 9–10.) Bally's Management contracts with HealthScope Benefits to provide medical benefits to participants of the Plan. *See* ECF No. 11-3. The Plan is self-funded, based on contributions from Bally's Management and participants. *Id.* at 1, 2; (ECF No. 13 at 17.)

Under the Plan, participants who are tobacco users are charged a tobacco surcharge of $65 per month, for a total of approximately $780 per year. (ECF No. 10 ¶ 10; ECF No. 11-5.) Participants in the Plan may participate in a tobacco cessation program, the expenses of which are covered by the Plan. (ECF No. 10 ¶ 32; ECF No. 11 at 11–12.) Completion of the Plan results in removal of the surcharge, at least prospectively. *Id.* Ms. Williams is a participant in the Plan. (ECF No. 10 ¶ 11.) As part of her participation in the Plan, Ms. Williams paid a tobacco surcharge of $65

per month, for a total of approximately $780 per year. (ECF No. 10 ¶ 10; ECF No. 11-5.)[1]

The parties disagree on the sufficiency of Plan materials provided by Bally's Management in satisfying the notice requirement outlined in 29 C.F.R. § 2590.702(f)(4)(v).[2] At issue are six documents: (1) a Summary Plan Description ("SPD") for the welfare benefits plans administered by Bally's Management that applied through plan year 2024 ("2022 SPD") (ECF No. 11-1); (2) an SPD for the welfare benefits plans administered by Bally's Management that is currently in effect for plan year 2025 ("2025 SPD") (ECF No. 11-2); (3) an SPD for benefits administered by HealthScope Benefits effective January 1, 2024 ("HealthScope SPD") (ECF No. 11-3); and (4)–(6) Benefits Guidebooks for the Plan for plan years 2023, 2024, and 2025. ("2023 Benefits Guide") (ECF No. 11-6); ("2024 Benefits Guide") (ECF No. 11-7); ("2025 Benefits Guide") (ECF No. 11-5.)

Ms. Williams filed suit against Bally's Management, alleging claims related to the tobacco surcharge. *See* ECF No. 1. In Count I of her Amended Complaint, Ms.

---

[1] Bally's Management has submitted that, as of August 20, 2025, Williams completed a tobacco cessation program and has been refunded all tobacco surcharges paid during plan year 2025. (ECF No. 18.)

[2] Williams makes no objection to the Court's consideration of documents submitted by Bally's Management in connection with its motion to dismiss. (ECF No. 13 n.4.) The Court may properly consider these documents without converting Bally's Management's motion into one for summary judgment. *See Freeman v. Town of Hudson*, 714 F.3d 29, 35–36 (1st Cir. 2013) (holding that documents whose authenticity is unchallenged and documents sufficiently referred to in the complaint may be considered without converting a motion to dismiss into a motion for summary judgment).

Williams claims that Bally's Management's imposition of the tobacco surcharge violates ERISA and its implementing regulations for two core reasons. (ECF No. 10 ¶¶ 54–60.) First, Ms. Williams claims that the Plan fails to provide the "full reward" to participants who complete the alternative standard because the Plan allegedly does not retroactively reimburse participants who complete the program by refunding the tobacco surcharge, which Ms. Williams asserts ERISA requires. (ECF No. 10 ¶ 57.) Second, Ms. Williams claims that the Plan materials provided by Bally's Corporation insufficiently notify participants of the availability of a reasonable alternative standard for obtaining the full reward. (ECF No. 10 ¶ 58.)

In Count II of her Amended Complaint, Ms. Williams claims that Bally's Management breached its fiduciary duties as the administrator of the Plan. (ECF No. 10 ¶¶ 61–73.) Her core contention under Count II is that Bally's Management imposes an unlawful tobacco surcharge on Plan participants, as per Count I, and that it does so to offset its own contributions to the Plan. *See* ECF No. 10 ¶¶ 61–73. More specifically, she claims that the tobacco surcharge constitutes a prohibited transaction under 29 U.S.C. § 1106. *Id.* ¶ 69; (ECF No. 13 at 14–15.) Ms. Williams brings this claim on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109. (ECF No. 10 ¶ 182.)

Bally's Management moved to dismiss Ms. Williams's Amended Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 11.) In its motion, Bally's Management first argues that Ms. Williams lacks both statutory and constitutional standing for her claims under Count II because,

according to Bally's Management, claims for a breach of a fiduciary duty brought pursuant to 29 U.S.C. § 1109 require showing "losses to the plan," and that Ms. Williams has not alleged any concrete, particularized, and redressable injury to the Plan. *Id.* at 15–20.

Bally's Management then asserts that Ms. Williams has failed to state a claim for Count I because the notice provided in its Plan materials regarding the availability of a reasonable alternative standard was sufficient as a matter of law, and they did, in fact, provide retroactive reimbursement for compliance with its tobacco cessation program—despite not being legally required to do so. *Id.* at 20–28. Bally's Management also argues that Ms. Williams has failed to state a statutory claim for Count II because the tobacco surcharge was lawful, and that it was not prohibited from using funds from the tobacco surcharge to pay plan benefits. *Id.* at 28–34. Finally, Bally's Management claims that both Counts I and II should be dismissed because Ms. Williams failed to exhaust administrative remedies before filing suit. *Id.* at 34–37.

## II.    STANDARD OF REVIEW

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003). "Rule 12(b)(1) motions challenging subject-matter jurisdiction are divided into two categories: facial challenges and factual challenges." *Cebollero-Bertran v. Puerto Rico Aqueduct and Sewer Auth.*, 4 F.4th 63, 69 (1st Cir.

2021). "With facial challenges the movant raises a question of law without contesting the facts." *Id.* "The analysis is essentially the same as a Rule 12(b)(6) analysis: we accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." *Id.* "If a Rule 12(b)(1) motion contests factual allegations of the complaint, the court must engage in judicial factfinding to resolve the merits of the jurisdictional claim." *Id.*; *see Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363–64 (1st Cir. 2001).

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must set forth a "plausible claim." That means the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009). The reviewing court must assume the truth of all "well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Thomas v. Rhode Island,* 542 F.3d 944 (1st Cir. 2008). "Nonetheless, questions of statutory interpretation are questions of law ripe for resolution at the pleadings stage." *Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009).

## III.  DISCUSSION

The Court proceeds by addressing two threshold issues: first, whether Ms. Williams has standing to assert her claims for fiduciary breach under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109; second, whether Ms. Williams was required to

exhaust administrative remedies before suing Bally's Management. The Court then addresses the merits of Ms. Williams's claims under Count I. As the Court finds that Ms. Williams lacks standing to assert her claims for fiduciary breach, the Court does not address the merits of those claims.

### A.    Standing

"There is no ERISA exception to Article III." *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 547 (2020). Article III of the United States Constitution "gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, 593 U.S. 659, 668 (2021). "That power includes the requirement that litigants have standing." *Id.* "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole*, 590 U.S. at 540 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent', not 'conjectural' or 'hypothetical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560).

Under 29 U.S.C. § 1109, a person who breaches a fiduciary duty to a plan "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." "According to the

Supreme Court, § 1132(a)(2) 'does not provide a remedy for individual injuries distinct from plan injuries." *N.R. by and through S.R. v. Raytheon Co.*, 24 F.4th 740, 750 (1st Cir. 2022) (quoting *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008)).  As such, to have standing to assert a claim under 29 U.S.C. § 1109, a plaintiff must allege some concrete, particularized, and redressable injury to the plan itself.  *See Thole*, 590 U.S. at 546 (finding no standing for claims against ERISA fiduciaries where plaintiffs failed to "plausibly and clearly claim" that alleged mismanagement of a plan substantially increased the risk that the plan would fail); *c.f. Raytheon*, 24 F.4th at 750–51 (affirming dismissal for failure to state a claim where the plaintiff failed to properly allege plan asset mismanagement and where the plaintiff did not "seek a remedy that [would] inure to the Plan as a whole").

Bally's Management argues that Ms. Williams lacks constitutional standing for her claims for breach of fiduciary duty because she has failed to allege "any particularized, non-speculative facts about how the Plan suffered any resulting injury" from Bally's Management's supposed breach of its fiduciary duties.  (ECF No. 11 at 17–18.)  Bally's Management further argues that any injury to the Plan alleged by Ms. Williams is non-redressable, because any recovery to the Plan from Bally's Management would, in turn, offset Bally's Management's obligations to the Plan because the Plan is self-funded.  (ECF No. 11 at 18–19.)

Ms. Williams responds by arguing that she has sufficiently alleged that the defendant used the tobacco surcharges as a substitute for its own contributions to the Plan, to an overall detriment to the Plan's financial health.  (ECF No. 13 at 14–15.)

Ms. Williams alternatively argues that, even if the Plan suffered no losses, 29 U.S.C. § 1109 "creates two distinct and independent grounds for fiduciary liability: (1) restoration of 'any losses to the plan' and (2) disgorgement of 'any profits of such fiduciary which have been made through use of assets of the plan.'" *Id.* at 15–16. According to Ms. Williams, the second of these two grounds permits a recovery based on any improper benefit obtained by Bally's Management, regardless of whether the Plan suffered a corresponding loss. *Id.* With respect to redressability, she argues that the Plan's self-funded nature does not absolve Bally's Management of its fiduciary obligations. *Id.* at 17–18.

The Court agrees with Bally's Management that Ms. Williams lacks standing to assert her claims for breach of fiduciary duty. In her Amended Complaint, the only injuries to the Plan (as opposed to participants in the Plan) alleged by Ms. Williams are speculative, contained in conclusory statements such as Bally's Management having pocketed the tobacco surcharge "to the detriment of the Plan," (ECF No. 11 ¶ 63), or that Bally's Management "enriched itself at the expense of the Plan." *Id.* ¶ 67. Although she subsequently argues that the administration of the tobacco surcharge "distorted the Plan's cost-sharing formula and undermined its financial health," (ECF No. 13 at 15), Ms. Williams's Amended Complaint lacks any non-speculative facts that would support this assertion. *See Thole*, 590 U.S. at 546. And as noted by Bally's Management, *see* ECF No. 14 at 5–6, if the tobacco surcharge was indeed improperly collected, the proper remedy—and the one primarily sought by Ms. Williams—would be for the surcharge to be returned to Plan participants, and not to the Plan itself.

Because Ms. Williams has failed to properly allege any concrete, non-speculative, and redressable injury to the Plan, the Court finds that Ms. Williams lacks standing to assert her claims under Count II of her Amended Complaint, which must therefore be dismissed.[3]

## B.    Administrative Exhaustion

"It is well settled that there is a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Morais v. C. Bev. Corp. Union Employees' Supp. Ret. Plan*, 167 F.3d 709, 712 n.4 (1st Cir. 1999) (quoting *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986)).  The First Circuit applies that requirement in contract-based ERISA claims, including denial-of-benefits claims.  *See Madera v. Marsh USA, Inc.*, 426 F.3d 56, 63 (1st Cir. 2005); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 825–26 (1st Cir. 1988).  The First Circuit distinguishes these claims from statute-based ERISA claims, for which it has not definitively ruled as to whether administrative exhaustion may be required.  *See Drinkwater*, 846 F.2d 825–26; *see also Batal-Sholler v. Batal*, 621 F. Supp. 3d 122, 140 (D. Me. 2022) (noting the judicial origin of ERISA exhaustion requirements and

---

[3] The Court acknowledges its finding differs from those of other federal courts faced with similar claims. *See, e.g.*, *Bokma v. Performance Food Group, Inc.*, 783 F. Supp. 3d 882, 894–95 (E.D. Va. 2025); *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-CV-04179-SRB, 2025 WL 1260700, at *3–4 (W.D. Mo. Apr. 15, 2025); *Waggoner v. The Carle Found.*, Case No. 24-CV-2217, ECF No. 27 (C.D. Ill. Sept. 16, 2025).  But the arguments regarding standing in those cases appear to have centered around whether plaintiffs who had not participated in tobacco cessation programs could claim the injury-in-fact needed to assert standing for their claims.  Only *Waggoner* appears to address this issue specifically as it pertains to ERISA fiduciary breach claims, and then only in a footnote that does not assess whether the plaintiffs had properly alleged injury to the plan itself. *See Waggoner* at n.3.

determining that "the application of an exhaustion requirement that is not statutorily required is 'within the discretion of the district court.'") (quoting *Accion Social de P.R., Inc. v. Viera Perez*, 831 F.2d 365, 369 (1st Cir. 1987)).[4]

Bally's Management argues that Ms. Williams's claims are, in fact, denial-of-benefits claims that are "artfully dressed in statutory clothing." (ECF No. 11 at 36) (quoting *Drinkwater*, 846 F.2d at 826). According to Bally's Management, Ms. Williams is essentially challenging "an enhanced premium that the Plan administrator should have paid." *Id.* Had she pursued available administrative remedies, they argue Ms. Williams would have discovered that the Plan has an alternative standard for avoiding the tobacco surcharge, and that by pursuing that standard "she may have likely received a retroactive repayment of the surcharge." (ECF No. 14 at 16–17.) Bally's Management asserts that this would have "likely mooted the issues in this case." *Id.* at 17.

Ms. Williams, in turn, argues that the Court should follow the approach taken by the majority of federal courts of appeals and "find that exhaustion is not required for her statutory ERISA claims because applying the exhaustion doctrine here would serve none of its intended purposes." (ECF No. 13 at 37–38.) She argues that the issues in the present case "are purely legal" and Bally's Management's internal

---

[4] "The Third, Fourth, Fifth, Ninth, Tenth, and D.C. Circuits "have all held exhaustion is not required when plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of the Plan." *Hitchcock v. Cumberland U. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017) (quoting *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 965 (D.C. Cir. 2014)). Conversely, the Seventh and Eleventh Circuits "have held the exhaustion requirement applies even where plaintiffs assert statutory rights." *Id.*

procedures would be insufficient and "would impose needless delay without promoting deference or administrative efficiency." *Id.* at 39. Ms. Williams further rejects Bally's Management's assertion that her claims are "disguised benefits claims," and argues that Bally's administrative process was not equipped to handle her claims because the Plan's administrative process applies exclusively to requests related to benefits, rather than to Ms. Williams's claims, which she alleges pertain to "the very structure of the surcharge, and the administration of the wellness program." *Id.* at 40.

At the outset, the Court is unconvinced by Bally's Management's argument that Ms. Williams's claims are disguised benefit claims—i.e., contractual claims requiring administrative exhaustion—rather than statutory claims. As acknowledged by Bally's Management, *see* ECF No. 11 at 35, the HealthScope SPD defines an "adverse benefit determination" as "a denial, reduction, or termination of a benefit, or a failure to provide or make payment, in whole or in part, for a benefit." *See* HealthScope SPD at 90. This definition mirrors regulatory language defining adverse benefit determinations. *See* 29 C.F.R. § 2560.503-1(m)(4). But Ms. Williams "does not contend that she was improperly denied participation in the program or that she failed to receive a benefit she was entitled to under the Plan." (ECF No. 14 at 40.) Instead, she challenges the Plan's compliance with 29 U.S.C. § 1182 and the Departments' regulations. (ECF No. 10 ¶¶ 54–60.)

Further, even were the Court to find it has discretion to impose an administrative exhaustion requirement on Ms. Williams's statutory claims, the terms

of the Plan documents appear to only provide for an administrative appeals process for cases involving a "denied claim for benefits" or an adverse benefit determination. *See* 2025 SPD at 55–58; HealthScope SPD at 90–91. As Ms. Williams's claims do not fall under these categories, the Plan documents do not provide a clear avenue for any administrative process for challenging the legality of the tobacco surcharge. *C.f. Guevara Ortiz v. Union Independiente de Empleados Telefonicos*, 540 F. Supp. 3d 169, 174 (D.P.R. 2021) (finding it "unclear what administrative remedies the [ERISA plaintiffs] were supposed to exhaust" where the appeals procedure described in plan documents applied only to "a reimbursement request or any denial of benefits" and not to the plaintiff's claims). As such, even if it has the discretion to impose an exhaustion requirement for Ms. Williams's statutory claims, the Court finds that it would be inappropriate to do so here.

## C.    Claims for Unlawful Imposition of a Discriminatory Tobacco Surcharge

Ms. Williams's core contention is that Bally's Management's "tobacco surcharge program" violates ERISA's antidiscrimination provision, codified in 29 U.S.C. § 1182, because it does not satisfy the criteria for a wellness program that would permit the imposition of a tobacco surcharge. (ECF No. 10 ¶ 31.) Specifically, she claims two defects in the program: (1) the Plan allegedly does not provide retroactive reimbursement, which Ms. Williams claims to be mandated by law; and (2) the Plan materials failed to comply with ERISA's notice requirements regarding the availability of a "reasonable alternative standard" for the reward (i.e., removal of the surcharge). *Id.* As such, according to Ms. Williams, Bally's Management's tobacco

cessation program does not qualify as a wellness program, and therefore impermissibly discriminates against Plan participants based on their status as tobacco users. *See id.*

Bally's Management disputes both of these claims. *See* ECF No. 11 at 20–28. The Court addresses each claim in turn.

### 1.    Failure to Provide the "Full Reward"

In her Amended Complaint, Ms. Williams alleges that the tobacco surcharge program does not provide for retroactive reimbursement. (ECF No. 10 ¶ 32–34.) Instead, she contends, completion of the program only removes the surcharge prospectively. *Id.* She cites the 2023 and 2024 Benefits Guides for support for this contention, as both provide for elimination of the tobacco surcharge "[u]pon completion of the applicable program" without any express provision for retroactive reimbursement. *Id.* ¶ 34. According to Ms. Williams, failure to provide retroactive reimbursement directly violates ERISA's requirement to provide the "full reward" to all similarly situated individuals. *Id.* ¶ 32.

Bally's Management disagrees with Ms. Williams's allegations. (ECF No. 11 at 22–28.) First, Bally's Management disputes Ms. Williams's characterization of the language contained in the 2023 and 2024 Benefits Guides as foreclosing the possibility of retroactive reimbursement. (ECF No. 11 at 22.) Bally's Management then notes the inclusion of additional language in the 2025 SPD that more clearly states that prior surcharge amounts paid during the current plan year will be refunded to participants who complete the wellness program. *Id.* (citing 2025 SPD at

13). Bally's Management also disputes Ms. Williams's assertion that they do not, as a practice, provide retroactive reimbursements, arguing that she presents no facts in her complaint that would support this assertion, apart from "conclusory" and "threadbare" allegations. *Id.*

Bally's Management also argues that Ms. Williams's claims fail as a matter of law because the relevant statutory and regulatory framework does not require it to retroactively reimburse participants who complete the wellness program. *Id.* at 24–28. They note that neither the regulatory nor the statutory text contain any requirement other than that a "full reward" be provided to plan participants. *Id.* at 25; *see* 29 C.F.R. § 2590.702(f)(1)(i), (4)(iv); 42 U.S.C. § 300gg-4(j)(3)(D). Therefore, they argue that the purpose behind the relevant statutory framework is "to promote health or prevent disease," *see* 42 U.S.C. § 300gg-4(j)(1)(A), and requiring retroactive reimbursement would disincentivize participants from completing the wellness program in a timely fashion. (ECF No. 11 at 26–27.) They interpret the use of the terms "discount . . . of a premium" and "absence of a surcharge" in the description of potential rewards as indicating the prospective nature of those rewards. *Id.* at 27 (quoting 42 U.S.C. § 300gg-4(j)(3)(A)).

The threshold issue for this claim is which party is correct as to the proper meaning of the term "full reward." If Bally's Management is correct that a "full reward" does not require retroactive reimbursement to Plan participants who complete the wellness program (or a reasonable alternative standard), then it is

irrelevant whether Bally's Management did, in fact, provide retroactive reimbursement to participants.

Neither 29 C.F.R. § 2590.702(f)(4)(v) nor 42 U.S.C. § 300gg-4(j)(3)(E) clearly define the term "full reward." In support of her position, however, Ms. Williams cites the preamble to the Departments' ERISA regulations, which provides the following:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.).

78 Fed. Reg. 33158, 33163. While she does not argue that the language of the preamble itself carries the force of law, *see* ECF No. 13 at 27 n.18, she instead cites *Auer v. Robbins*, 519 U.S. 452 (1997), to argue that the Court must defer to the Departments' interpretation of "full reward" as contained in the regulations' preamble. *Id.* at 28. As further support for the Departments' interpretation, she refers the court to the Department of Labor's enforcement action in *Secretary of Labor v. Macy's, Inc.*, No. 1:17-CV-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021). There the Department of Labor argued that the plain language of the regulations requires reimbursement of a tobacco surcharge for the entire plan year. (ECF No. 13 at 28–29.)

Under *Auer v. Robbins*, a court must defer to an agency's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with

the regulation." 519 U.S. at 461. This deference applies where the interpreted regulation is itself ambiguous and the agency's interpretation is reasonable. *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019). According to Ms. Williams, this case "is a textbook example" of where *Auer* deference should apply. (ECF No. 13 at 28.) Other courts that have considered similar claims addressing the meaning of "full reward" have found *Auer* deference to mandate acceptance of the preamble language as controlling. *See Mehlberg v. Compass Grp. USA, Inc.*, No. 24-CV-04179-SRB, 2025 WL 1260700, at *5 (W.D. Mo. Apr. 15, 2025) (citing *Auer*, 519 U.S. at 461 1997); *Bokma v. Performance Food Group, Inc.*, 783 F. Supp. 3d 882, 906 (E.D. Va. 2025) (finding *Mehlberg* persuasive regarding the applicability of *Auer* deference to substantively similar tobacco surcharge claims).

However, another court confronted with similar claims noted, in dicta, that *Mehlberg* and *Bokma* did not address a problem with applying *Auer* deference in this case: the "anti-parroting doctrine." *See Buescher v. N. Am. Lighting, Inc.*, No. 24-CV-2076, 2025 WL 1927503, at *26 (C.D. Ill. June 30, 2025). Under *Gonzalez v. Oregon*, a court need not defer to an agency's interpretation of a parroting regulation because "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." 546 U.S. 243, 257 (2006). While *Bokma* and *Mehlberg* deferred to the preamble in deciding when the disclosure requirements were triggered, those courts do not appear to have considered whether

the anti-parroting doctrine might be implicated. *See Bokma* 783 F. Supp. 3d at 906–07; *Mehlberg*, 2025 WL 1260700, at *5–6.

The First Circuit confronted a similar issue involving *Auer* deference and the anti-parroting doctrine in *Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund*, 724 F.3d 129 (1st Cir. 2013). In that case, the federal Pension Benefit Guaranty Corporation ("PBGC") claimed that its interpretation—provided in an appeals letter that was not subject to notice and comment—should be afforded *Auer* deference regarding its definition of the term "trade or business" as provided in 29 C.F.R. §§ 4001.2, 4001.3. *Id.* at 140. The court disagreed for two reasons, one of which was that the regulations being interpreted "made no effort to define 'trades or businesses' and merely refer to Treasury regulations, which . . . also do not define the phrase." *Id.* at 141 (internal citation omitted). As those regulations were found to simply parrot the phrase "trade or business" contained in 29 U.S.C. § 1301(b)(1), the court found *Auer* deference inapplicable under the anti-parroting doctrine. *Id.*

Here, as identified in *Buescher,* 29 C.F.R. § 2590.702(f)(4)(iv) simply repeats the statutory "full reward" requirement found in 42 U.S.C. § 300gg-4(j)(3)(D). Bally's Management thus argues that the anti-parroting doctrine applies and precludes mandatory deference to the Departments' interpretation of the regulation. (ECF No. 11 at 25.) While Ms. Williams disagrees with Bally's argument, contending it "ignores how administrative law actually works," she fails to address how *Gonzalez v. Oregon* and *Sun Capital Partners* are inapplicable. *See* ECF No. 13.

22

Another recent tobacco surcharge case further complicates this issue. *See Waggoner v. The Carle Found.*, Case No. 24-CV-2217, ECF No. 27 (C.D. Ill. Sept. 16, 2025). In *Waggoner*, when faced with the challenge to *Bokma* and *Mehlberg* presented by *Buescher*, the court noted the plaintiff's argument that the phrase "full reward" in fact originates from the Department of Labor's 2006 wellness program regulations, which used language that was adopted "almost verbatim" into ERISA through the Affordable Care Act. *Id.* at *45–46; *see* Nondiscrimination and Wellness Programs in Health Coverage in the Group Market, 71 Fed. Reg. 75014 (Dec. 13, 2006). Thus, the plaintiffs argued, the court ought to defer to the Department of Labor's interpretation of its own regulation that was subsequently adopted by Congress. *Waggoner*, at *45–46. Waggoner did not, however, decide whether this argument warranted *Auer* deference, as it found that even were it not required to it would still follow the Departments' interpretation.[5]

After weighing the arguments on either side of this question, the Court agrees with Bally's that, under *Gonzalez v. Oregon* and *Sun Capital Partners*, *Auer* deference is not required here. While the Departments' interpretation, as expressed

---

[5] The court in *Waggoner* also noted the potential impact of *Loper Bright*, 603 U.S. 369 (2024), on *Auer* deference, but declined to definitively rule on this issue. *See Waggoner*, at *46. *Mehlberg* found *Auer* deference still applicable, *see* WL 1260700, at *5, as did *Buescher*, which noted that permitting deference to an agency's interpretation of its own parroting regulation, when deference to the regulation's interpretation of the underlying statute would itself be impermissible, "would seem an improper end run around *Loper Bright.*" 2025 WL 1927503, at *26. *Bokma* declined to affirmatively rule on the interplay of *Auer* and *Loper Bright*. *See* 783 F. Supp. 3d at 897. As no compelling authority has yet ruled on this issue, this Court will continue to apply both *Auer* and *Gonzalez v. Oregon*.

in its preamble and in its arguments in *Macy's*, is a reasonable interpretation of an ambiguous regulatory phrase ("full reward"), that phrase is clearly parroted from the underlying statutory text, 42 U.S.C. § 300gg-4(j)(3)(D).  And although that statute may itself (as identified in *Waggoner*) have incorporated language from preexisting Department of Labor regulations, Ms. Williams has presented no authority suggesting the Court must stretch *Auer* deference through 42 U.S.C. § 300gg-4(j)(3)(D) to its regulatory predecessor.  The Court, as such, declines to do so.

The Court is therefore left to interpret the meaning of "full reward" as used in 42 U.S.C. § 300gg-4(j)(3)(D).  While *Buescher* correctly determined that *Auer* deference is not required for this question, that court did not assess whether a "full reward" required retroactive reimbursement of a tobacco surcharge for the *current* plan year because the health plan in that case provided for cessation of the tobacco surcharge during the entirety of the *following* plan year.  *See id.* at *25–26.  And while *Bokma* and *Mehlberg* involved substantively similar reward programs as in the present case, those courts did not fully engage in independent analysis of the meaning of the "full reward" requirement because, as noted above, both courts found that *Auer* deference applied and resolved any question as to the correct interpretation.  *See Bokma*, 783 F. Supp. 3d 882 at 903–05; *Mehlberg*, 2025 WL 1260700, at *5–6. *Waggoner*, on the other hand, found the Departments' interpretation of "full reward" to be persuasive, finding that "[t]he reasonable reading of the 'full reward' being available to 'all similarly situated individuals' under the wellness program is that those who complete the reasonable alternative standard are entitled to the same

24

reward as those who do not smoke—an exemption from the tobacco surcharge for the entire Plan year." *Waggoner*, at *46.

This Court disagrees. Based on the text of 42 U.S.C. § 300gg-4(j)(3)(A), the Court declines to read a retroactive reimbursement requirement into the meaning of "full reward" as provided by 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv). Specifically, the Court agrees with Bally's Management that the terms "discount . . . of a premium" and "absence of a surcharge" provided in 42 U.S.C. § 300gg-4(j)(3)(A) as possible rewards do not mandate a retroactive reimbursement of previously paid surcharges. Whether an individual who receives only a prospective "absence of a surcharge" halfway through the plan year obtains the same reward as an individual who did not have to pay the surcharge from the beginning of the year is a matter of perspective: while on the one hand the first individual received a different reward because that individual had to pay the tobacco surcharge up until the time they completed the program, on the other hand both receive the same reward of not being prospectively charged a tobacco surcharge. Given this statutory ambiguity, the Court declines to impose a retroactive reimbursement requirement that is not clearly defined in the statute on Bally's Management.

In sum, the Court finds that, as a matter of law, 42 U.S.C. § 300gg-4(j)(3)(A) and 29 C.F.R. § 2590.702(f)(4)(iv) do not require Bally's Management to provide retroactive reimbursement of the tobacco surcharge. As such, the Court need not wade into the factual dispute over whether Bally's Management did, in fact, provide retroactive reimbursement of the tobacco surcharge for the relevant plan years.

### 2. Failure to Notify of Reasonable Alternative Standard

Ms. Williams's other claim is that Bally's Management failed to comply with ERISA's notice requirements regarding the availability of a "reasonable alternative standard" to the tobacco cessation program. (ECF No. 10 ¶ 36.) Ms. Williams acknowledges that the Benefits Guidebooks mention the tobacco surcharge and a smoking cessation program. *Id.* However, Ms. Williams argues that the Benefits Guides fail to mention that participants' physicians' recommendations will be accommodated, which she asserts is required by ERISA's wellness program regulations. *Id.* Ms. Williams further contends that Bally's Management failed to include information about the smoking cessation program in the Plan Document or the SPD. *Id.* ¶ 37. According to Ms. Williams, Bally's Management's failure to provide this notice deprived participants of the opportunity to avoid or reduce the tobacco surcharge. *Id.* ¶ 38.

Bally's Management disagrees both with Ms. Williams's characterization of the notice provided by the SPD and with the sufficiency of the Benefits Guides. (ECF No. 11 at 20–21.) They note the following language in the 2022 SPD, describing the Plan's wellness program:

> The wellness program is part of the Employer's commitment to helping you achieve your best health. Rewards for participating in a wellness program are available to all Employees. If you believe that you may be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact the Contact Person and we will work with you (and if you wish with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

*Id.* at 20 (quoting 2022 SPD at 13).

While this paragraph does not itself reference the tobacco surcharge, the previous page of the 2022 SPD contains the following language:

> "Your cost for medical coverage may be affected by your use of tobacco products, your participation in certain wellness program activities (See "WELLNESS PROGRAM" for additional information), and, if you are married and cover your spouse, your spouse's eligibility for employer sponsored group medical coverage."

2022 SPD at 12. Bally's argues that the description of the wellness program substantively matches the Department of Labor's sample disclosure language, including by referencing the option of working with a participant's doctor to find an appropriate wellness program. (ECF No. 11 at 21; ECF No. 14 at 8.) They also note that the 2025 SPD includes a similar notice containing additional information regarding the tobacco surcharge and the wellness program. (ECF No. 14 at 20.)

Bally's Management then contends that the disclosures in the Benefits Guides and the HealthScope SPD are sufficient because they do not describe the terms of the wellness program and are therefore not required to discuss the terms of the reasonable alternative standard. *Id.* at 21–22. In support of this argument, they cite to 42 U.S.C. § 300gg-(4)(j)(3)(E), which provides that, "[i]f plan materials disclose that such a program is available, *without describing its terms*, the disclosure under this subparagraph shall not be required." (Emphasis added); *see also* 29 C.F.R. § 2590.702(f)(4)(v) (mirroring this language).

Ms. Williams responds by arguing that the Departments' relevant regulations do, in fact, require that any plan material that references a tobacco surcharge must satisfy all the notice requirements, including the statement regarding

recommendations from an individual's personal physician. (ECF No. 13 at 21.) She once again points to the preamble to the Departments' regulations, which explains that "a plan disclosure that references a premium differential based on tobacco use . . . *is a disclosure describing the terms* of a health-contingent wellness program and, therefore, must include this disclosure." 78 Fed. Reg. 33158, 33166 (June 3, 2013) (emphasis added). She argues that the Benefits Guides—which reference the tobacco surcharge but do not include a statement that recommendations of an individual's personal physician will be accommodated—fail to satisfy the notice requirement. (ECF No. 13 at 21.)

The Court agrees with Bally's Management that the statements contained in both the 2022 and 2025 SPDs comply with the statutory and regulatory notice requirements as a matter of law. Specifically, the Court agrees that the description of the wellness program substantively matches the sample language—indeed, almost verbatim—provided by the Department of Labor. *See* 29 C.F.R. § 2590.704(f)(6); *compare* 2022 SPD at 13. The statement in the 2025 SPD also substantively matches this sample language. *See* 2025 SPD at 13. The Court finds no merit to Ms. Williams's claims regarding the sufficiency of the notice provided by the 2022 and 2025 SPDs.

The sufficiency of the notice provided in the Benefits Guides, however, is a trickier question given the preamble statement. Once again, at issue is whether the Court must defer to the Departments' interpretation of their own regulation, as would be generally required by *Auer v. Robbins*. *See* 519 U.S. at 461. And, although neither

side identifies this issue with respect to the disclosure requirements,[6] the anti-parroting doctrine is again implicated because the regulatory language being interpreted by the preamble statement is almost identical to the underlying statute. *See* 29 C.F.R. § 2590.702(f)(4)(v) ("The plan or issuer involved shall disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard . . . If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required."); *compare* 42 U.S.C. § 300gg-(4)(j)(3)(E) ("The plan or issuer involved shall disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard . . . If plan materials disclose that such a program is available, without describing its terms, the disclosure under this subparagraph shall not be required.").[7]

The Departments' preamble is an attempt to interpret the definition of "describing the terms" in an analogous way to the PBGC's attempt to interpret the definition of "trade or business" in *Sun Capital Partners*. The Court consequently

---

[6] As with the interpretation of "full reward," while *Bokma* and *Mehlberg* deferred to the preamble when interpreting when the disclosure requirements are triggered, those courts appear to have neglected to consider whether the anti-parroting doctrine might be implicated. *See Bokma* 783 F. Supp. 3d at 906–07; *Mehlberg*, 2025 WL 1260700, at *5–6. *Waggoner*, on the other hand, does not appear to have been confronted with a similar claim implicating this particular preamble language.

[7] The only substantive difference between the regulation and the statute is the regulation's inclusion of specific terms (omitted above) that must be included in the disclosures when the disclosures are triggered, e.g., the statement regarding accommodating a participant's doctor's recommendations. But those specific terms are not what are being interpreted by the preamble statement at issue.

finds that, under the anti-parroting doctrine set forth in *Gonzalez v. Oregon* and *Sun Capital Partners*, it need not apply *Auer* deference in the present case. As such, the Court must itself interpret whether the Benefits Guides "described the terms" of the wellness program, within the meaning of 29 C.F.R. § 2590.702(f)(4)(v) and 42 U.S.C. § 300gg-(4)(j)(3)(E), such that full disclosure of a reasonable alternative standard (including the statement that recommendations of an individual's personal physician would be accommodated) was required. As this is essentially a question of statutory and regulatory interpretation of the meaning of the phrase "describing the terms," this is a question of law that is resolvable on the pleadings. *See Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009); *see also Freeman v. Town of Hudson*, 714 F.3d 29, 35–36 (1st Cir. 2013) (noting that a court may consider uncontested documents sufficiently referred to in the complaint without converting a motion to dismiss into a motion for summary judgment).

Based on its reading of the relevant Benefits Guides, the Court finds that those guides did not describe the terms of the wellness program in a way that would trigger the full notice requirements in 29 C.F.R. § 2590.702(f)(4)(v). Of relevance here is the regulation's clear distinction between materials that "merely mention" the availability of a program and materials that describe the program's terms. *See* 29 C.F.R. § 2590.702(f)(4)(v). The Benefits Guides reference the availability of the wellness program (including the possibility of an alternative standard), but do not concretely describe the terms of the program beyond noting that completion of the program will result in elimination of the tobacco surcharge. *See* 2023 Benefits Guide

30

at 7; 2024 Benefits Guide at 8; 2025 Benefits Guide at 13.  Further, each Benefits Guide contains a warning that the Plan's terms are governed solely by the materials contained in official plan documents (i.e., not the Benefits Guides), and that participants should refer to plan-specific documents "for detailed plan information." *See* 2023 Benefits Guide at 1; 2024 Benefits Guide at 1; 2025 Benefits Guide at 2. This suggests that the Benefits Guides should not themselves be construed as describing the terms of the wellness program, but rather the program's availability.

In sum, the Court finds that the 2022 and the 2025 SPDs both, as a matter of law, include the necessary statements to satisfy the notice requirements under 29 C.F.R. § 2590.702(f)(4)(v) and 42 U.S.C. § 300gg-(4)(j)(3)(E).  The Court further finds that the Benefits Guides do not, as a matter of law, "describe the terms" of the wellness program such that those same notice requirements are triggered.  Therefore, the Court finds that Ms. Williams has failed to state a claim that Bally's Management violated ERISA's notice requirements.

## IV.  CONCLUSION

Based on the foregoing, because Ms. Williams lacks standing to assert her fiduciary breach claim under Count II of her Amended Complaint, the Court GRANTS Bally's Management's Motion to Dismiss that claim for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  Further, because Ms. Williams has failed to state a claim for unlawful discrimination under 29 U.S.C. § 1182, the Court GRANTS Bally's Management's Motion to Dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(6).

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

November 4, 2025